453 So.2d 1187 (1984)
Joe Jack CALDWELL and Yvonne Caldwell, Appellants,
v.
ALLSTATE Insurance Company, Appellee.
No. AU-61.
District Court of Appeal of Florida, First District.
August 14, 1984.
*1188 David M. Wiesenfeld of Dawson, Galant, Sulik, Levy & Ellis, Jacksonville, for appellants.
Shawn Ettingoff and J. Stephen O'Hara, Jr., of Mathews, Osborne, McNatt, Gogelman & Cobb, Jacksonville, for appellee.

ON REHEARING
The following opinion is substituted for the original opinion filed June 1, 1984. The parties' various motions for rehearing or clarification are otherwise denied.
NIMMONS, Judge.
This is an appeal from a summary final judgment entered in favor of Allstate Insurance Company ("Allstate") in a suit wherein the appellants ("the Caldwells") sought to recover amounts in excess of policy limits by reason of Allstate's denial *1189 of coverage and refusal to defend its insured. James David Watts ("Watts").
A chronology of the facts and proceedings is necessary to our discussion of the proper resolution of this case. Three separate lawsuits, all filed in the Circuit Court of Duval County, are involved in the chronology: (1) the Caldwells, plaintiffs vs. Watts, defendant, filed September 15, 1980, hereafter sometimes referred to as "the accident case"; (2) Allstate, plaintiff vs. Watts and the Caldwells, defendants, filed March 4, 1981, hereafter sometimes referred to as "the declaratory judgment case"; and (3) the Caldwells, plaintiffs v. Allstate, defendant, the instant case in which the Caldwells sought to recover sums in excess of policy limits.
The genesis of this litigation was a collision in September, 1980, between a motor vehicle operated by appellant Joe Caldwell and a vehicle owned and operated by James David Watts. On September 15, the Caldwells instituted the accident case against Watts and Allstate alleging negligence on the part of Watts and alleging that Allstate provided liability coverage to Watts for damages arising out of his negligence in causing the accident. Allstate employed attorney S. Thompson Tygart, Jr., to represent it in the suit and to investigate whether there was coverage under its policy. An answer was filed on October 1, 1980, on behalf of Allstate denying all allegations of the complaint, including those allegations concerning coverage.
On January 23, 1981, Allstate's counsel filed a "Motion for Leave to File a Cross-Claim and Counterclaim" by which Allstate sought to institute a declaratory judgment proceeding on the coverage question. Prior to the scheduled hearing on Allstate's motion, the Caldwells voluntarily dismissed Allstate as a party defendant.
Tygart further investigated the insurance coverage question and, although adhering to his original opinion of no coverage, recommended that Allstate institute a declaratory judgment action in order to settle the question.
On March 4, 1981, Tygart filed such an action on behalf of Allstate against Watts and the Caldwells. Although the complaint requested that an injunction be entered staying the Caldwells' accident case against Watts, Allstate never called up for hearing any such motion for injunctive relief. The Caldwells answered Allstate's complaint on March 30, 1981. Meanwhile, in the accident case, after the Caldwells dismissed Allstate from that case, Allstate was not furnished any further notices or pleadings except that the Caldwells' attorney did notify Tygart by letter on May 8 that the Caldwells intended to proceed to final judgment against Watts. No answer or appearance on behalf of Watts having ever been filed in the accident case, a default was entered against Watts on September 2, 1981, upon motion by the Caldwells.
On September 17, 1981, a summary final judgment was entered in favor of Allstate in the declaratory judgment action declaring no coverage and no duty to defend Watts. Two weeks later, the Caldwells took an appeal from that summary judgment to this court.
While the above appeal was pending, the Caldwells proceeded to a nonjury trial in the accident case on the issue of damages. Final judgment was entered on November 19, 1981, against Watts and in favor of the Caldwells in the sum of $32,547. The subject Allstate policy provided for liability limits for bodily injury to each person in the amount of $15,000.
Subsequently, on July 14, 1982, this court reversed the trial court's summary judgment in the declaratory judgment case and found coverage under the policy. See Caldwell v. Allstate Insurance Company, 417 So.2d 1040 (Fla. 1st DCA 1982). Allstate's motion for rehearing was denied on August 31, 1982. The Caldwells' attorney had, on July 14, 1982, demanded payment from Allstate of the entire amount of the judgment plus interest.
Pursuant to negotiations between Allstate and the Caldwells, Allstate paid to the Caldwells on October 28, 1982, the sum of *1190 $17,100.60 representing the $15,000 coverage limits, costs and interest. Although Allstate's attorney had attempted to condition such payment upon the Caldwells' waiver or relinquishment of any right to pursue a claim in excess of the policy limits, the Caldwells declined that demand, and Allstate ultimately agreed to the above payment without the Caldwells' waiver of any rights they might have to pursue their excess claim.
In January, 1983, the Caldwells filed the instant suit against Allstate seeking recovery of the amount of the judgment in the accident case in excess of Allstate's $15,000 liability limits. The Caldwells asserted two theories: (1) breach of contract  Allstate breached its contractual obligation to defend its insured in the accident case; and (2) bad faith  Allstate was guilty of bad faith in failing to defend its insured and in failing to attempt to negotiate a settlement for its insured. The trial court granted a summary judgment for Allstate on both counts of the Caldwells' complaint.
We believe that the trial court was correct in entering summary judgment on the bad faith count. It cannot reasonably be said that Allstate or its counsel was guilty of the kind of conduct which has typified those cases in which the courts have found the existence of bad faith. American Fidelity Fire Insurance Company v. Johnson, 177 So.2d 679 (Fla. 1st DCA 1965); Thomas v. Western World Ins. Co., 343 So.2d 1298, 1303 (Fla. 2nd DCA 1977); Florida Farm Bureau Mutual Insurance Company v. Rice, 393 So.2d 552 (Fla. 1st DCA 1980). It is apparent from the record that Allstate's attorney exercised reasonable diligence in investigating the Caldwells' claim in the accident case including the question of coverage under its policy of insurance. In fact, Mr. Tygart did exactly what this court suggested in American Fidelity:
[T]he better part of wisdom should have dictated to American Fidelity the resolution of the question of its liability to the insured under the claimed renewal of the policy by the simple expedient of a declaratory judgment proceeding, at the inception of the litigation.
177 So.2d at 683. See also A.M. Glass Industries v. Allstate Ins. Co., 441 So.2d 672, 674 (Fla. 2nd DCA 1983). Early in the accident suit, Tygart sought to file a counterclaim and crossclaim seeking a declaratory judgment on the coverage question. Instead, the Caldwells dismissed Allstate from the suit. Tygart persevered in his efforts to obtain a judicial declaration by filing a separate declaratory judgment action. The trial court in the declaratory judgment action on September 17, 1981, entered summary judgment for Allstate finding no coverage from which judgment the Caldwells took an appeal to this court. Meanwhile, the Caldwells, having obtained a default against Watts on September 2, 1981, proceeded to final judgment in the accident case on November 19, 1981. The declaratory judgment was not reversed until the following July.
Even though we agree with the trial court's determination that Allstate is not liable for amounts exceeding policy limits under the bad faith theory. Allstate is not out of the woods because there may be liability under the appellees' breach of contract theory. Allstate asserts that recovery under such a theory is foreclosed because of the absence of any offer by the Caldwells to settle within the policy's limits of liability.[1] Although this court has recognized such to be the general rule, Davis v. Nationwide Mutual Fire Insurance Co., 370 So.2d 1162 (Fla. 1st DCA 1979), it does not necessarily apply in all breach of contract excess recovery claims. For example, if the insured is unable to employ *1191 his own attorney, and if it can be demonstrated that an attorney could have asserted defenses which could reasonably be expected to avoid, totally or partially, a judgment against the insured, then the company should be answerable for so much of the excess over the policy limits as its breach caused. The court in Thomas v. Western World Insurance Co., supra, in discussing the breach of contract theory, observed:
[E]ven in the absence of a settlement offer, the insurer may be liable for an excess judgment where (1) due to the actions of the insurer, the insured suffers a default or final judgment without benefit of an attorney, and (2) the insured can prove the final judgment would have been lower had the suit been properly defended. Such a case would fall within the general rule, quoted above, that policy limits do not restrict the damages recoverable by the insured for breach of contract.
343 So.2d at 1302. Moreover, Allstate's argument that it was acting in good faith in denying coverage because it did so upon an honest belief supported by advice of counsel is unavailing. See St. Paul Fire and Marine Insurance Co. v. Thomas; 273 So.2d 117, 122, f.n. 7 (Fla. 4th DCA 1973). Although an insurance company is certainly entitled to make a thorough investigation to determine whether there is coverage under its policy of insurance, the company acts at its peril in refusing to defend its insured in that, if it is subsequently determined that the company erroneously denied coverage, the company will be liable for damages for breach of its agreement under the policy. Florida Farm Bureau Mutual Insurance Co. v. Rice, supra. Of course, as we have said, that does not mean that one seeking recovery under this theory will automatically be entitled to recover. He must first prove that he has sustained damages as a legal cause of the carrier's breach.
The Caldwells point to their affidavit filed in connection with the summary judgment proceedings to demonstrate the damages flowing from Allstate's refusal to defend. Their affidavit simply says that if Allstate had defended Watts in the accident case, the Caldwells would have offered to settle the case for the policy limits of $15,000. Therefore, the Caldwells assert, the damages in the instant case should be regarded as the total amount of the judgment entered against Watts less the $17,100 already paid by Allstate. We reject this approach. Plaintiffs' proof of damages must rest upon something other than their self-serving after-the-fact statement that they would have settled for the $15,000 policy limits.
Basically, Allstate's breach was its failure to provide its insured with representation in the accident case. The insured had a contractual right to be furnished competent legal representation by Allstate. But even though the company failed to furnish counsel, such an insured has an obligation to avoid the consequences of the breach by employing counsel himself where the circumstances are such that he can reasonably be expected to do so. See Thomas v. Western World Insurance Co., supra, at p. 1303; cf. American Fidelity Fire Insurance Co. v. Johnson, supra, at p. 683; see generally 17 Fla.Jur.2nd Damages §§ 22 et seq. And even if it can be said that the circumstances were such that the insured was unable to employ an attorney, the plaintiffs have the burden of proving that the final judgment would likely have been lower had the suit been properly defended.
If the insureds fail in carrying the burden, they are in no worse position now than they would be had the carrier not breached its contract and had undertaken a proper defense.
Thomas v. Western World Ins. Co., supra at 1303.
The thrust of Allstate's motion for summary judgment, together with its supporting affidavits, was that it was entitled to summary judgment under both theories of the complaint because (1) it had not engaged in conduct amounting to "bad faith" and (2) there had been no settlement offer within the limits of the policy's liability. Although we agree that the trial court *1192 correctly granted summary judgment on the bad faith count, we do not believe that summary judgment was proper on the breach of contract count. The complaint alleged that Allstate's breach of the policy provisions caused its insured to be unrepresented in the accident case and resulted in a default being entered against its insured. The complaint also alleged that as a result of Allstate's breach, the amount of the judgment awarded the Caldwells was substantially greater than would have been recovered had Allstate provided him with legal representation. The affidavits and other documents relied upon by the parties and the trial court do not adequately address these issues. It cannot, therefore, be said that there was no genuine issue of material fact regarding the breach of contract count.[2]
We therefore affirm the summary judgment as to the bad faith count and reverse as to the breach of contract count and remand for further proceedings consistent with this opinion.
MILLS and SMITH, JJ., concur.
NOTES
[1] Allstate candidly concedes that the absence of such a settlement offer would not bar excess recovery under the bad faith theory. E.g. Florida Farm Bureau Mutual Insurance Company v. Rice, supra; Davis v. Nationwide Mutual Fire Insurance Co., 370 So.2d 1162 (Fla. 1st DCA 1979). (Although the opinion in Davis did not actually characterize the alleged conduct of the insurance carrier as "bad faith," the conduct alleged, as reflected in the opinion, certainly fell within the category of bad faith.)
[2] No issue was raised on appeal regarding the Caldwells' right to stand in the shoes of the insured in asserting the latter's breach of contract claim against the insurance carrier. This court's decision in Florida Farm Bureau Mutual Insurance Co. v. Rice, supra, seems to assume such right although, there, the carrier was determined to be guilty of bad faith. However, Allstate did not urge the "standing" ground in support of its motion for summary judgment in the court below, the trial judge apparently did not rely upon such ground, and the parties' briefs have not addressed such point. We, therefore, do not reach that question, and the trial court is not foreclosed from considering the same upon proper presentation in the ensuing further proceedings.