[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-11336
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 11, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-80310-CV-KLR


MICHAEL A. JOHNSON,
KATHLEEN M. JOHNSON,

                                        Plaintiffs-Appellants,

versus

GEICO GENERAL INSURANCE COMPANY,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 11, 2009)

Before EDMONDSON, Chief Judge, TJOFLAT and BLACK, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Michael A. Johnson and Kathleen M. Johnson ("Insureds") appeal the grant of summary judgment in favor of Defendant-Appellee Geico General Insurance Co. ("Geico") in Insureds' suit against Geico for bad faith failure to settle a claim. No reversible error has been shown; we affirm.

Michael Johnson was involved in a fatal collision with an automobile driven by Woody Staley, Jr. on 24 May 2003. Staley was injured and taken to the hospital from the accident scene; Staley's passenger, Louise Turner, died at the scene. At the time of the accident, Johnson was insured by Geico through an automobile policy providing the minimum bodily injury ("BI") liability coverage available: $10,000 per person, $20,000 per accident. Staley was also a Geico policyholder; Staley's underinsured/uninsured motorist ("UM") coverage was with Geico.

The accident was reported to Geico by Johnson on Sunday, 25 May. Johnson informed Geico that at least one witness reported that he had run a red light; Johnson stated he believed the light was green and contested fault. On the following business day, 27 May, a Geico adjuster contacted Insureds. Insureds were advised of the policy limits of their liability insurance; they also were told

2

that it is the policyholder's choice whether to retain a personal attorney.  The next day, 28 May, Geico assigned an accident investigator to investigate the accident and to obtain a police report.

On 29 May 2003, Staley's attorney, Andrew Pelino, contacted Wendy Anderson, an adjuster at Geico assigned to Staley's UM claim, about Staley's UM coverage.  Anderson advised that Geico would tender the full $10,000 coverage limit.  On 30 May 2003, Pelino called the BI adjuster at Geico assigned to Staley's claim; he left a message for a return call.  On 3 June 2003, Pelino sent a letter to the BI adjuster introducing himself and requesting that information about Johnson's BI policy be sent to him within 30 days.  No request to tender the policy limits was made.  On 27 June -- within the 30-day period set out by Pelino -- Geico faxed an affidavit of insurance coverage to Pelino and advised that a certified copy had been requested and would be forwarded upon receipt.

On 9 June 2003, the police report became available for the first time; it confirmed that Johnson had run a red light. The police report also assessed Staley's injuries as "non-incapacitating."  On 12 June 2003, Geico authorized payment of the BI policy limit to the estate of the passenger who had died in the accident.  Also on that date, the BI adjuster was told by the home office to contact the UM adjuster to  ascertain the extent of Staley's injuries.  The BI adjuster learned that

3

Staley was still in the hospital; he was in ICU and on a respirator. On 27 June, the BI adjuster learned that Staley had died as a result of the accident; Geico authorized the BI adjuster to contact Pelino to tender the policy limits. Pelino was unavailable and failed to return the BI adjuster's call. The BI adjuster called again that day but was again unable to reach Pelino. When the BI adjuster and Pelino had contact on 1 July, Pelino advised that suit had been filed that day; Pelino rejected Geico's tender.

A wrongful death judgment in excess of $2,000,000 was entered against Insureds in the suit brought on behalf of the estate of Staley. Insureds filed suit against Geico claiming that Geico had acted in bad faith in failing to negotiate a settlement with Staley for the policy limits. The district court concluded that in the light of the quick turnaround between Geico's learning of the accident and its tender of the policy limits -- 33 days -- the facts, even when viewed most favorably to Insureds, could support no finding of bad faith. We agree.

Florida law imposes a duty of good faith on insurers in negotiating and settling a claim against an insured. The essence of an insurance bad faith claim is that the insurer acted in its own best interests to the detriment of the insured; the insurer failed to act timely and thereby exposed the insured to an excess judgment. See Macola v. Government Employees Ins. Co., 953 So.2d 451, 458 (Fla. 2006).

4

When resolving an insurance claim against its insured, the insurer

> has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.... This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980) (internal citations omitted). And even in the absence of a settlement offer, the insurer may be liable for bad faith: "[w]here liability is clear, and injuries so serious that a judgment in excess of policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." Powell v. Prudential Property & Casualty Ins. Co., 584 So.2d 12, 14 (Fla. App. 1991). "Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause." Id.

Whether an insurer acted in bad faith generally raises an issue of fact for determination by a jury. See Campbell v. Government Employees Ins. Co., 306 So.2d 525, 530-31 (Fla. 1974). But, Florida appellate courts have affirmed summary judgment where the undisputed facts would allow no reasonable jury to

5

conclude the defendant acted in bad faith. See Clauss v. Fortune Ins. Co., 523 So.2d 1177, 1178 (Fla. App. 1988) (judgment for insurer proper where there were insufficient allegations of unreasonable and bad faith conduct on the part of the insurer); Caldwell v. Allstate Ins. Co., 453 So.2d 1187, 1190 (Fla. App. 1984) (judgment for insurer proper when it could not reasonably be said that insurer guilty of bad faith).

Insureds predicate their argument that Geico acted in bad faith on its handling of the BI claim chiefly on the manner in which Geico handled the UM claim. Insureds note that, immediately upon learning of the accident, Geico's UM adjuster offered to tender the UM policy limits to Staley. Because UM coverage is excess over liability coverage under Florida law, see Fla. Stat. § 627.727, Insureds argue that Geico's tender of the UM coverage necessarily meant that Geico had determined -- as of 29 May 2003 -- that Johnson was liable to Staley for bodily injury in an amount in excess of Insureds' BI policy limits. Insureds contend that this early determination of liability (confirmed by the accident report received on 9 June 2003), together with the fact that Staley was taken to the hospital from the accident scene, was still in the hospital on 12 June 2003, and remained hospitalized until his death, set out a totality of circumstances from which a reasonable fact finder could conclude that Geico's failure to tender the BI policy limits earlier

6

constituted actionable bad faith.

As the district court noted in denying Insureds' discovery requests seeking production of the UM claim file maintained by Geico, the UM claim was a claim based on the insurance contract between Staley and Geico; the BI claim was based on the insurance contract between Insureds and Geico. The two contracts and the two claim files were unrelated; the interactions between Pelino and the UM adjuster and the interactions between Pelino and the BI adjuster were different.[1] The inquiry here is whether Geico acted reasonably in handling the BI claim in the light of the totality of the circumstances.

At the outset, the BI adjuster knew that its insured disputed liability; Geico's immediate obligation was to investigate liability and to respond to the insurance inquiries of Pelino. The record shows Geico proceeded expeditiously to obtain the police report and to respond timely to Pelino's 30-day demand for insurance information. Insureds argue that as of 12 June -- upon learning that Staley was still in the hospital -- the BI adjuster knew their insured was at fault and that liability

---

[1] We reject Insureds' argument that the district court committed reversible error when it denied Insureds' discovery requests directed to Geico's UM file on Staley's UM claim. Discovery rulings are committed to the sound discretion of the trial court and are reviewed only for abuse of discretion. See Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999). A "range of choice" applies to a district court's ruling on motions to compel discovery; "we will not second-guess the district court's actions unless they reflect a clear error of judgment." Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006) (internal quotation and citation omitted). No clear error of judgment has been shown.

exceeded the policy limits. At that point, Insureds contend, Geico was obligated to tender the policy limits to protect its insured. But as the district court noted, the record fails to show that, at that point in time, the BI adjuster had information confirming that the injuries sustained by Staley in the accident were related to his hospitalization. The record does show that on 27 June 2003, when the BI adjuster learned that Staley died of injuries related to the accident, the BI adjuster sought and received settlement authority and initiated settlement communications.

An insurer -- acting with diligence and due regard for its insured -- is allowed a reasonable time to investigate a claim; no obligation exists to accept a settlement offer (or to tender policy limits in advance of a settlement offer) without time for investigation. See Boston Old Colony, 386 So.2d at 785 (part of good faith duty is obligation of insurer to investigate the facts); DeLaune v. Liberty Mut. Ins. Co., 314 So.2d 601 (Fla. App. 1975) (recognizing right first to make inquiry and evaluate merits of claim before obligation to settle is triggered).

After viewing all the evidence in the light most favorable to Insureds, we conclude that insufficient evidence of bad faith was proffered to take this case to a jury. The record shows that liability was contested initially by Johnson. Geico's BI adjuster moved quickly to determine liability. Staley's counsel made a 30-day demand for policy information; Geico responded in far fewer days. Even though

8

no facts suggested that Staley needed immediate funds and no settlement demand was made, Geico offered the policy limits within that 30-day period and just 33 days of the accident date.  In the light of the information known to Geico and the totality of the circumstances, no reasonable jury could find that Geico breached its duty of good faith.

AFFIRMED.