[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12851
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 5:10-cv-00213-RS-CJK

ROBERT F. BARNARD,
as Personal Representative of the Estate of
Raymond Paulk,

                                                             Plaintiff,

ROBIN BAXLEY,
as Personal Representative of the Estate of
Michael Jesse Scarberry,

                                                  Plaintiff - Appellant,

MICHAEL W. KEHOE, et al.,

                                                Intervenor Plaintiffs,

versus

GEICO GENERAL INSURANCE COMPANY,

                                                 Defendant - Appellee,

THE CICCHETTI LAW FIRM,

Intervenor.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 9, 2011)

Before BARKETT, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant Robin Baxley appeals the district court's grant of summary judgment in favor of Geico General Insurance Company. The dispute arises out of a single-vehicle accident that resulted in the death of passenger Michael Jesse Scarberry. Baxley contends that summary judgment was inappropriate because genuine issues of material fact exist that preclude entry of judgment as a matter of law. After thorough review, we affirm.

I.

The relevant facts are largely undisputed. On January 7, 2005, Layura Sellers, the daughter of Geico policyholders Winnie and Raymond Paulk, was driving the Paulks' vehicle when she was involved in a car accident. The crash resulted in the death of Scarberry, the son of plaintiff Baxley. Winnie Paulk

2

reported the accident to insurer Geico the following day. On January 19, 2005, eleven days after being informed of the accident, Geico tendered a check for the full policy limits made out to the personal representative of Scarberry's estate and Baxley's lawyer, Hosam Zawahry. Accompanying this check was a release of further liability, which included the names of Winnie Paulk and Layura Sellers. On February 13, Geico sent a letter to the Paulks advising them of their policy limits, of the possibility that they could face liability in excess of their policy limit, and of their right to retain an attorney to represent their interests.

Over the next six months, Geico attempted to follow up with Zawahry on at least sixteen occasions via telephone, fax, mail, and in-person visits, but Zawahry never responded to Geico's correspondences. On July 18, 2005, a Geico representative hand delivered an unsolicited replacement check, along with a second proposed release, to Zawahry's office because the first check had expired.

On August 5, 2005, Zawahry responded for the first time to Geico's tendering of the policy limits and release. In his response, he made numerous requests of Geico and stated that if Geico complied within thirty days, then Baxley would release her claims. Specifically, Zawahry asked that Geico (1) either waive the creation of an estate for Scarberry or pay $2500 so Zawahry could arrange its creation; (2) verify that there was no other insurance policy covering the vehicle;

(3) submit certain disclosures specified by statute; and (4) re-draft the release to include language stating that any future court-ordered restitution remains unaffected by the release. Geico shortly thereafter contacted Winnie Paulk to verify that no other insurance policy was in effect for the vehicle. On August 29 and 31, Geico attempted to contact Zawahry but, again, could not get in touch with him. Meanwhile, Geico contacted another lawyer about the creation of an estate for Scarberry, and that lawyer unsuccessfully attempted to contact Zawahry to discuss creating that estate.

On September 8, 2005, Geico responded to Zawahry's August 5 communication, informing him that no other policy existed and asking for clarification.[1] On September 19, Zawahry responded to Geico's letter. In this communication, Zawahry accused Geico of intentionally misdating its September 8 communication and explained that Geico failed to meet the demands of the August 5 letter.

On September 21, 2005, Winnie Paulk advised Geico that she had received a complaint filed by Baxley in state court. The result of that suit was a consent judgment in favor of Baxley in the amount of $2.5 million. On September 18,

---

[1]This letter is dated August 31. Geico does not dispute that the letter was in fact sent via fax on September 8 and then via mail on September 9.

2009, Baxley filed this third-party bad faith action against Geico in state court, and on October 14, 2009, Geico removed it to federal district court. On May 25, 2011, the district court entered summary judgment in favor of Geico, and this appeal followed.

## II.

We review the district court's grant of summary judgment *de novo* and apply the same legal standard as the district court. *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007). Summary judgment is appropriate where the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Florida law[2] requires that insurers act in good faith when attempting to negotiate or settle a claim against the insured. *See Clauss v. Fortune Ins. Co.*, 523 So. 2d 1177, 1178 (Fla. Dist. Ct. App. 1988). "[T]he essence of a third-party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim." *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 458 (Fla. 2006) (quotation omitted). Bad faith is determined based on the "totality of the

[2]Neither party contests that Florida law governs this diversity case.

circumstances" standard. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004). In Florida, the standard for good faith is as follows:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. . . . This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Bos. Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (per curiam) (citations omitted).

Bad faith causes of action generally raise issues of fact for determination by the jury. *See Campbell v. Gov't Emps. Ins. Co.*, 306 So. 2d 525, 530–31 (Fla. 1974). However, Florida courts have endorsed judgment as a matter of law in cases where the undisputed facts would not support the conclusion that the insurer acted in bad faith. *See, e.g.*, *Gutierrez*, 386 So. 2d at 785–86; *RLI Ins. Co. v. Scottsdale Ins. Co.*, 691 So. 2d 1095, 1096 (Fla. Dist. Ct. App. 1997); *Clauss*, 523 So. 2d at 1178; *Caldwell v. Allstate Ins. Co.*, 453 So. 2d 1187, 1190 (Fla. Dist. Ct. App. 1984). Our focus in a bad faith case is on the actions of the insurer "in

6

fulfilling its obligations to the insured." *Berges*, 896 So. 2d at 677.

Here, Geico tendered a check for the policy limits and a proposed release just eleven days after the occurrence of the accident. It then attempted to contact Zawahry on at least sixteen separate occasions to discuss the status of its release and tender of the policy limits. Without being prompted, Geico issued *another* check for the policy limits and a proposed release when the first check expired. The undisputed facts show that, up to this second tender, Geico tried to contact Zawahry but remained unsuccessful due to Zawahry's complete failure to respond to any of its communication. Rather than showing that Geico acted in self interest in "fail[ing] to properly or promptly defend the claim," *see Macola*, 953 So. 2d at 458, these undisputed facts illustrate quite the opposite: Geico worked diligently to pursue settlement in the amount of the policy limits. *See Clauss*, 523 So. 2d. at 1178 (finding no bad faith as a matter of law where the insurance company was willing to tender the policy limits pending policy verification and did so *after* receiving notice of the bad-faith claim). As in *Caldwell*, it cannot be reasonably said that Geico "was guilty of the kind of conduct which has typified those cases in which the courts have found the existence of bad faith." 453 So. 2d at 1190 (citing cases).

The district court correctly explained that Geico kept the Paulks informed of

7

the status of the claim from the first tender of the policy limits. Furthermore, Baxley points to no facts that support the contention that Geico failed to inform the Paulks of the contents of Zawahry's August 5 letter. In fact, Geico's Activity Log for the claim shows a phone call to the insured on August 11. The notes from this call show that Geico inquired into, among other things, whether a separate insurance policy was in place, just as Zawahry's letter suggested. Importantly, during the time it was considering Zawahry's letter, Geico again sought to contact Zawahry on August 29 and 31, only to receive no response. No reasonable juror could find that Geico acted in bad faith when Zawahry made it impossible to engage in settlement discussion.

Baxley asserts that a jury could infer bad faith from Geico's September 8 letter. The letter was dated August 31, and Baxley contends that this date indicates that Geico was trying to deceive her so as to place it within the thirty-day period specified in Zawahry's August 5 correspondence. No reasonable juror could infer bad faith from this oversight. There is simply no dispute surrounding the date Zawahry received the letter, and Geico has never attempted to characterize this communication as being sent prior to the date it was received.

Baxley also emphasizes that the initial releases—proposed by Geico but never signed by Baxley—do not include the name of Raymond Paulk. Baxley

8

explains that this exclusion can give rise to an inference of bad faith because, if they had been signed, Raymond Paulk would have been subject to personal liability. We agree with the district court that this was a negligent oversight that falls far short of bad faith contemplated by this cause of action. Moreover, because these releases were never executed, the failure to include Raymond Paulk's name does not in any way constitute causation for the liability in excess of the policy. *See Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 903–04 (Fla. 2010) ("[T]here must be a causal connection between the damages claimed and the insurer's bad faith.").

In sum, no rational juror could conclude that, given the totality of the circumstances, Geico acted in bad faith when it attempted for over six months to settle the claim at issue. Upon receiving Zawahry's letter, Geico investigated the requests made therein and responded accordingly, attempting again to contact Zawahry to no avail. It hired a lawyer to set up an estate for the deceased child in a manner that would protect the insured. The district court properly granted summary judgment in light of Zawahry's "inexplicable evasive behavior" that was both "outrageous and unprofessional." No reasonable juror could conclude that the failure to settle was due to Geico's bad faith when Baxley's former lawyer thwarted settlement attempts by being unavailable and ignoring nearly all of

9

Geico's communications.

**AFFIRMED.**