LEVINE, J.
Olive Goheagan, as personal representative of the estate of Molly Swaby, individually and as assignee of John Perkins, appeals a final summary judgment entered in favor of American Vehicle Insurance Company (“AVIC”) on Goheagan’s claim of bad faith in failing to protect its insured, Perkins, from an excess judgment. We find, as a matter of law, that the insurer AVIC did not act in bad faith. We therefore affirm.
On February 24, 2007, Perkins rear-ended the decedent, Swaby, while traveling at a high rate of speed. Perkins had bodily injury liability coverage under an AVIC policy in the amount of $10,000/$20, 000. Swaby was severely injured in the accident and remained hospitalized in a coma until her death on May 12, 2007.
Two days after the collision, on February 26, Perkins reported the accident to AVIC. AVIC opened a claims file and assigned the claim to adjuster Lee Ann Grieser. AVIC spoke to Perkins’s attorney on February 27. On February 28, Grieser sent a letter to Perkins advising him that the bodily injury claims for the accident may exceed his policy limits, and that AVIC would “make every attempt to settle all claims for bodily injury in accordance with [his] policy limits.” As of March 1, Grieser had determined that Perkins was the sole cause of the accident and intended to settle the claim for Perkins’s $10,000 policy limit.
Grieser attempted to contact Goheagan, Swaby’s mother, on February 28, March 1, March 21, March 27, and April 16. On February 28, Grieser was told by Swaby’s stepfather that Goheagan had retained an attorney. The stepfather gave Goheagan’s cell phone number to Grieser and told Grieser to call Goheagan. Later that day, Grieser called Goheagan’s home number and was told by a friend of Goheagan that *1139 Goheagan was not available. Grieser left her contact information with Goheagan’s friend.
On March 1, Grieser left Goheagan a voicemail message asking for Goheagan’s attorney’s information. On March 7, an AVIC property adjuster called Goheagan and received no answer or answering machine.
Grieser reached Goheagan on March 21 and asked for the name of Goheagan’s attorney. Goheagan told Grieser that they would talk later.[1] Grieser called again on March 27. Goheagan initially told Grieser to speak to someone else. When Grieser asked Goheagan for the name of the attorney that the stepfather had informed her was hired regarding this accident, Goheag-an said she would call Grieser back. On April 16, Grieser called Goheagan and again Goheagan said it was not a convenient time to talk and that Grieser would have to call some other time. On April 19, Grieser learned that Goheagan had filed a wrongful death suit against Perkins. AVIC offered to tender Perkins’s $10,000 available coverage to Goheagan’s attorney on April 26, which was rejected. Goheag-an also rejected a second settlement offer dated June 7.
Subsequently, Goheagan’s wrongful death action against Perkins went to trial. Following a jury verdict, a final judgment was entered against Perkins in the amount of $2,792,893.65 on January 20, 2009. An additional cost judgment in the amount of $28,070 followed.
Goheagan filed the instant common law bad faith action against AVIC after the final judgment was entered against Perkins in her wrongful death suit. Goheagan alleged that AVIC breached its duty of good faith with regard to the interests of Perkins, in part, by failing to affirmatively initiate settlement negotiations with Swa-by, failing to actually tender the policy limits in a timely fashion, and failing to warn Perkins of the possibility of an excess judgment.
AVIC moved for summary judgment, arguing that no genuine issue of material fact existed as to whether AVIC fulfilled its duty of good faith toward Perkins.
Goheagan filed the affidavit and deposition of Mark Lemke in opposition to AVIC’s motion for summary judgment. In Lemke’s opinion, “[t]he claim should have immediately been recognized as one requiring tender of the $10,000 policy limits. Steps should have been taken to immediately tender the $10,000 policy limits to Molly Swaby. This did not happen.” Lemke also submitted that no ethical rules would have prohibited Grieser from tendering a check to Goheagan.
The trial court granted summary judgment in favor of AVIC.[2] This appeal follows.
*1140 We apply a de novo standard of review to an order granting summary judgment. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). “The movant carries the burden of showing that no genuine issue of material fact exists, making summary judgment appropriate.” Jervis v. Tucker, 82 So.3d 126, 128 (Fla. 4th DCA 2012) (citation omitted). “If the evidence shows that an issue of material fact exists such that different reasonable inferences can be drawn, the issue should go to the jury as the finder of fact.” Id.
“[W]hen an insurer is handling claims against its insured, it ‘has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.’ ” Perera v. U.S. Fid. & Guar. Co., 35 So.3d 893, 898 (Fla.2010) (quoting Berges v. Infinity Ins. Co., 896 So.2d 665, 668 (Fla.2004)).
This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.
Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980) (citation omitted). Further, “[b]ad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause.” Powell v. Prudential Prop. & Cas. Ins. Co., 584 So.2d 12, 14 (Fla. 3d DCA 1991). See also Berges, 896 So.2d at 680 (explaining that “whether an insurer has acted in bad faith in handling claims against the insured is determined under the ‘totality of the circumstances’ standard”). In this case, we find that the evidence does not support the proposition that AVIC failed to settle the claim “if possible, where a reasonably prudent person ... would do so” nor does it demonstrate that the failure to settle was “willful and without reasonable cause.”
Section 624.155, Florida Statutes, requires an insurer to act in “good faith” and to act “fairly and honestly toward its insured and with due regard for her or his interests.” Although Goheagan alleged a common law cause of action for bad faith, we look to the obligation expressed in this statute for guidance, because it “is identical to the common law duty of good faith imposed on insurers in third-party claims.” Genovese v. Provident Life & Accident Ins. Co., 74 So.3d 1064, 1069 (Fla.2011) (Pariente, J., specially concurring); Macola v. Gov’t Emps. Ins. Co., 953 So.2d 451, 456 (Fla.2006) (“the same obligations of good faith that existed for insurers dealing with their insureds in the third-party context were extended by statute to the first-party context”); Farinas v. Fla. Farm Bureau Gen. Ins. Co., 850 So.2d 555, 559 (Fla. 4th DCA 2003). The common law duty “impose[s] upon the insurer the obligation of exercising good faith in negotiating for and in effecting a settlement of the claim against an insured.” Clauss v. Fortune Ins. Co., 523 So.2d 1177, 1178 (Fla. 5th DCA 1988). Grieser’s attempts to contact Goheagan to determine the name of Goheagan’s counsel five times would hardly appear to constitute the lack of diligence or care envisioned as an example of a bad faith claim. It is hard to see, from the facts in this case, how AVIC failed to act in good faith with due regard for the interests of its insured, Perkins.
*1141 Although the dissent postulates that AVIC could “have at least made a written offer and/or tender” of the liability limits to Swaby through Goheagan, the fact that AVIC refrained from doing either does not mean that AVIC has failed to meet its obligations. The facts of this case have AVIC literally repeatedly calling Goheagan to obtain the name of the attorney, and AVIC repeatedly being put off.
The focal point of a bad faith case is that the insurer puts its own interests ahead of the interests of its insured. “[T]he essence of an insurance bad faith claim is that the insurer acted in its own best interests, failed to properly and promptly defend the claim, and thereby exposed the insured to an excess judgment.” Maldonado v. First Liberty Ins. Corp., 546 F.Supp.2d 1347, 1353 (S.D.Fla.2008); see also Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852, 859 (1938).[3] There is no evidence in this record which demonstrates that AVIC placed its interests above the interests of Perkins. Nor is there any evidence “of the insurer’s failure to properly or promptly defend the claim.” Macola, 953 So.2d at 458 (citation omitted).
At oral argument, counsel for Goheagan appeared to argue that AVIC should have sent a letter enclosing a check for the policy limits to Goheagan, despite the fact that AVIC knew of the existence of an attorney hired by Goheagan. According to Goheagan’s counsel, the insurer should have gone forward with this attempt, but not concluded the settlement. We reject this interpretation of what an insurer must do to meet its obligation to demonstrate that it is defending a claim in good faith.
To accept Goheagan’s theory of bad faith, AVIC would have had to tender a letter with a check that could not be cashed. Since Swaby’s stepfather informed AVIC that Goheagan had retained an attorney regarding this accident, Florida Administrative Code Rule 69B-220.201 applied to AVIC’s conduct.[4] Pursuant to that rule, “[a]n adjuster shall not negotiate or effect settlement directly or indirectly with any third-party claimant represented by an attorney, if the adjuster has knowledge of such representation, except with the consent of the attorney.” Fla. Admin. Code R. 69B-220.201(3)(i).
The dissent notes the absence of case law permitting an insurer to rely on this rule as authority for its decision to refrain from making a written offer or tendering a check. But the plain language of the rule would appear to prohibit even the tendering of a check, since that could be construed as “negotiating” or “effecting” a settlement. “Negotiate” is defined as “To communicate with another party for the purpose of reaching an understanding”; “To bring about by discussion or bargaining”; or “To transfer (an instrument) by delivery or indorsement, whereby the transferee takes the instrument for value, in good faith.... ” Black’s Law Dictionary (9th ed. 2009). Although the dissent finds that “[i]t is unclear at what point an attorney had been retained” and that the attorney’s assistance “would not have precluded an offer,” we find that the appropriate inquiry under the rule is that AVIC “ha[d] knowledge of such representation” following Grieser’s initial conversation with the stepfather.
*1142 We also find that the affidavit and deposition of Mark Lemke [5] are insufficient to defeat summary judgment. “[Statements which are framed in terms only of conclusions of law are not sufficient to either raise a genuine issue of material fact or prove the non-existence of a genuine issue of material fact.” Progressive Express Ins. Co. v. Camillo, 80 So.3d 394, 399 (Fla. 4th DCA 2012). Factual conclusions are also insufficient. See Buzzi v. Quality Serv. Station, Inc., 921 So.2d 14, 15 (Fla. 3d DCA 2006). In his affidavit, Lemke expressed his opinions that AVIC “did not adjust the underlying claim in good faith and breached the duty of good faith it owed its insured,” and that “[t]he claim should have immediately been recognized as one requiring tender of the $10,000 policy limits.”[6] We consider these to be factual and legal conclusions. Lemke also opined that “[t]here were no ethical prohibitions that would have prevented [Grieser] from tendering a check.” This legal conclusion is refuted by Florida Administrative Code Rule 69B-220.201. To the extent Lemke’s deposition raised other disputed issues of fact as to what AVIC should have done differently, they are not material because there is no evidence in this record from which a reasonable juror could infer that AVIC failed to act with due regard for Perkins’s interests.
Although normally the question of whether an insurer acted in good faith is to be decided by a jury, there are instances where the evidence demonstrates that the insurer fulfilled all its legal obligations. Gutierrez, 386 So.2d at 785 (“The evidence presented in the present case demonstrates that Boston Old Colony fulfilled all these obligations.”). Where the insurer fulfills its obligations and there is “no sufficient evidence from which any reasonable jury could have concluded that there was bad faith on the part of the insurer,” then summary judgment should be granted for the insurer. Id.
For example, in Barnard v. Geico General Insurance Co., 2011 WL 2039560, at *3-4 (N.D.Fla. May 25, 2011), aff'd, 448 Fed.Appx. 940 (11th Cir.2011), summary judgment was granted for an insurer in part because “[i]t [was] clear that [the insurer] made every attempt to settle the claim for the policy limits, despite [the injured party’s attorney’s] inexplicable evasive behavior.” On appeal, the Eleventh Circuit affirmed, finding that “[n]o reasonable juror could find that [the insurer] acted in bad faith when [the attorney] made it impossible to engage in settlement discussion.” 448 Fed.Appx. at 944. Similarly, in the present case, AVIC aspired to “engage in settlement discussion,” a process which would begin with tendering the policy limits, but it was precluded from doing so before learning the name of the attorney, a task that Goheagan prevented.[7]
Other courts, including Florida courts, have also granted summary judgment in favor of an insurer where there was no evidence from which a jury could find that the insurer acted in bad faith. See Aboy v. *1143 State Farm Mut. Auto. Ins. Co., 394 Fed.Appx. 655, 656-57 (11th Cir.2010) (affirming summary judgment for insurer because the insurer had no duty to verify the injured party’s injuries when the injured party refused to cooperate, and “acted immediately” once it learned of injuries’ severity by speaking with injured party’s attorneys); McGuire v. Nationwide Assurance Co., 2012 WL 712965, at *11 (M.D.Fla. Mar. 5, 2012) (“from the very beginning, [insurer] stood ready to tender the [policy] limit and attempted to tender it”); Boateng v. Geico Gen. Ins. Co., 2010 WL 4822601, at *5 (S.D.Fla. Nov. 22, 2010) (“there is no evidence” that insurer “sought to avoid settling Plaintiffs claims for the policy limits”); RLI Ins. Co. v. Scottsdale Ins. Co., 691 So.2d 1095, 1096 (Fla. 4th DCA 1997) (finding that facts showed “beyond any doubt that the primary insurer at no time missed an opportunity to settle which would have put it in a bad faith posture”); Clauss, 523 So.2d at 1178 (finding no bad faith as a matter of law where there was one month between initial demand for policy limits and notice of bad-faith failure to settle, and insurer “expressed its willingness to tender the policy limits, but desired verification”); Caldwell v. Allstate Ins. Co., 453 So.2d 1187, 1190 (Fla. 1st DCA 1984) (determining that insurer was not “guilty of the kind of conduct which has typified those cases in which the courts have found the existence of bad faith”).
In the present case, as noted by the dissent, “the trial court did not do a comprehensive evaluation of the” entire record. Nevertheless, the trial court correctly entered summary judgment, not because there was no one to make an offer to since Swaby was in a coma, but rather because there was no genuine issue of material fact as to whether AVIC acted in bad faith. See Dade Cnty. Sch. Bd., 731 So.2d at 644 (“the Appellate Court will make its own determination as to the correctness of the decision of the lower court, regardless of the reasons or theories assigned therefor”) (citation omitted).
“The claim for ‘bad faith’ failure to settle should be exactly that — only for situations in which the insurer truly is refusing in bad faith to settle, not when it is in fact attempting to settle the claim.” Gwynne A. Young & Johanna W. Clark, The Good Faith, Bad Faith, and Ugly Set-up of Insurance Claims Settlement, 85 Fla. Bar. J. 9, 14-15 (Feb.2011). In this case, the undisputed facts demonstrate no basis from which a reasonable jury could conclude that AVIC acted solely in its own interest. AVIC acted “properly [and] promptly” in continually contacting Goheagan in order to discover the name of the attorney retained by her, so that it could then contact the attorney. Macola, 953 So.2d at 458. We affirm the trial court’s grant of summary judgment on behalf of AVIC, based on the unrefuted evidence that AVIC acted in good faith in attempting to settle this case.

Affirmed.

POLEN, J., concurs.
HAZOURI, J., dissents with opinion.

. After this phone call, Grieser indicated in her notes that she "did not discuss anything else ... as [Goheagan] is [represented].”

. At the hearing on AVIC’s motion, the trial court asked counsel for Goheagan, "To whom would they have tendered?” Goheagan's counsel responded that the check could have been tendered to Swaby. The court questioned, "In a coma who never recovered?” Goheagan responded that there is a distinction between tendering a check and the recipient having the ability to cash the check. The court replied that the law does not require a futile act. When counsel suggested that AVIC could have tendered a check to Goheagan, the court answered, "Who was not authorized to accept by your own admission.” As explained more fully below, we disagree with the trial court’s reasoning in this regard. However, we affirm the entry of summary judgment for AVIC based on our independent review of the entire record. See Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999).

. Even an insurer’s negligent conduct, alone, is insufficient to support a claim of bad faith. DeLaune v. Liberty Mut. Ins. Co., 314 So.2d 601, 603 (Fla. 4th DCA 1975).

. Section 626.878, Florida Statutes (2007), provides that "[a]n adjuster shall subscribe to the code of ethics specified in the rules of the department. The rules shall ... ensure preservation of the rights of the claimant to participate in the adjustment of claims.”

. The dissent argues that Lemke is "exceptionally qualified” to render his opinion although Lemke has never offered opinion testimony as an expert witness in court previously.

. The evidence showed that AVIC did promptly recognize that the accident involved clear liability. The fact that liability was clear was the reason Grieser called Goheagan five times to try to obtain the name of the attorney.

.The concern over potentially disingenuous bad faith claims "was debated in the majority and dissenting opinions in Berges, and it is far from over.” United Auto. Ins. Co. v. Estate of Levine ex rel. Howard, 87 So.3d 782 (Fla. 3d DCA 2011) (footnote omitted). One concern highlighted is "being unresponsive to the insurance companies’ attempts at communication.” McGuire, 2012 WL 712965, at *12.