Levine, J.
The issue presented on appeal is whether the trial court erred in denying the insurer’s motion for directed verdict on the insured’s bad faith claim. We find that the evidence was insufficient as a matter of law to show the insurer acted in bad faith in failing to settle the claim of the decedent’s estate against the insured. The evidence, taken in a light most favorable to the insured as the nonmoving party, showed that the insurer unconditionally tendered the estate the policy limits nine days after the accident, the insurer notified the insured that the estate wanted a statement seventeen days after the request, and the insured subsequently failed to provide a statement to the estate despite having the opportunity to do so before suit was filed. Moreover, even if the insurer’s conduct were deficient, the insurer’s actions did not cause the excess judgment rendered against the insured. As such, we find that the trial court erred in denying the insurer’s motion for directed verdict and reverse.
I. Background
On August 8, 2006, the insured, James Harvey, got into a car accident with John Potts, which resulted in Potts’ death. The insured’s vehicle was registered in both the insured’s name and his business’s name. The accident was reported to the insured’s insurer, GEICO, with which the insured had a $100,000 liability policy. The claim was then assigned to Fran Korkus, a claims adjuster.
Three days later, on August 11, GEICO advised its insured in writing that the claim by the decedent’s estate could exceed the insured’s policy limits and that the insured had the right to hire his own attorney. The insured subsequently retained his own attorney to protect his uninsured excess exposure.
On August 14, an employee of the attorney retained by the decedent’s estate contacted Korkus and advised of their representation of the estate. According to the employee, she asked Korkus to arrange for a statement from the insured regarding the insured’s personal and business assets, whether the insured was acting within the course and scope of his business at the time of the accident, and other potential insurance coverage for the claim. While the employee claimed that Korkus refused to make the insured available for a statement, Korkus said that if the attorney for the estate had asked for a statement she would not have refused the request. At no time did the estate’s attorney provide a deadline for obtaining this statement, nor was Korkus told that the insured’s statement was a prerequisite to settling the insured’s claim.
Nine days after the accident, on August 17, GEICO sent the estate a release along with a check for the $100,000 policy limits even though the estate never demanded the policy limits.
On August 23, the insured met with his personal counsel. The insured brought documentation to the meeting showing that the insured’s business, the only asset that would be available to the estate, had only $85,000 in its accounts.
On August 24, the estate’s attorney sent a letter to Korkus in response to the $100,000 check and release. The letter indicated that Korkus had declined the estate’s request to make the insured available for a statement and renewed its *813 request for the insured’s financial information. Korkus received this letter on August 31, faxed it to the insured, and verbally discussed its contents with him the same day. According to this insured, this was the first time he learned the estate wanted a statement.
Also on August 31, pursuant to her supervisor’s instructions, Korkus contacted the estate’s attorney to find out what kind of statement he wanted. The attorney responded that he wanted to determine what other assets or coverage the insured had available to him. The estate’s attorney sent a letter to Korkus memorializing the conversation, and Korkus immediately forwarded that letter to the insured advising him of the estate’s request. Additionally, Korkus sent the insured a sample affidavit that had blanks where the insured could input his available assets and coverage to provide this information to the estate. Notably, in renewing its request for a statement from the insured, the estate never provided any deadline or other timeframe within which this statement was to be provided.
The next day, the insured contacted Korkus and informed her that his attorney was not available until September 5, and asked Korkus to let the estate’s attorney know that the insured was working on preparing the financial statement. Although Korkus’s supervisor instructed Korkus to relay the insured’s message to the estate, Korkus did not do so. However, despite the insured’s attorney return -to availability on September 5, and despite .the insured knowing the estate wanted a statement, neither the insured nor his attorney took any further action to provide the estate with a statement.
On September 13, the estate filed a wrongful death lawsuit against the insured and returned GEICO’s $100,000 check. Ultimately, the estate received an $8.47 million judgment against the insured following a jury trial in the wrongful death action.
After the judgment was entered against him, the insured brought a bad faith claim against GEICO.[1] During the course of the bad faith trial, the insured admitted he had known about the ■ estate’s request for a statement at least thirteen days before the estate filed suit. The insured also admitted that, despite GEICO informing him of the estate’s request for a statement and having collected the financial documentation necessary to provide a statement, he failed to provide this statement to the estate before the lawsuit was filed on September 13. However, he claimed that had he known about the estate’s request before August 31, he would have provided the statement. Nothing in the record shows why the insured could not have given his statement between the time his personal attorney became available and the date the suit was filed.
The estate’s attorney testified at trial that had he known the insured planned on giving a statement, he would have recommended delaying the filing of the wrongful death suit even though he never advised either the insured, the insured’s attorney, or GEICO that without the statement the filing of the lawsuit was imminent. The estate’s attorney also testified that he would have recommended not pursuing the wrongful death lawsuit if he had known that only $85,000 in assets were available. Further, the estate’s personal representative stated she would have followed her attorney’s advice and would have declined to file the lawsuit. Finally, the insured introduced evidence in support of its claim of bad faith by GEICO that Korkus had *814 received some deficient performance reviews, and at times had difficulty managing her workload.
At the close of the insured’s case, GEI-CO moved for a directed verdict, and the trial court denied the motion. After the jury entered a verdict in the insured’s favor, GEICO moved for a judgment notwithstanding the verdict. The trial court denied the motion, and GEICO appealed.
II. Analysis
GEICO contends that the insured offered insufficient evidence at trial to support his bad faith claim. We review the lower court’s denial of a motion for a directed verdict de novo. Meruelo v. Mark Andrew of Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009). “[W]hen reviewing a trial court’s denial of a motion for directed verdict, an appellate court must view the evidence and all inferences in a light most favorable to the non-mov-ant, and should reverse if no proper view of the evidence could sustain a verdict in favor of the non-movant.” Weinstein Design Grp., Inc. v. Fielder, 884 So.2d 990, 997 (Fla. 4th DCA 2004).
We begin with a discussion of bad faith insurance claims under Florida law. The Florida Supreme Court stated in Boston Old Colony Insurance Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980):
An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured.
(citation omitted). Thus, an insurer is obligated to (1) “advise the insured of settlement opportunities”; (2) “advise as to the probable outcome of the litigation”; (3) “warn of the possibility of an excess judgment”; (4) “advise the insured of any steps he might take to avoid same”; (5) “investigate the facts”; (6) “give fair consideration to a settlement offer that is not unreasonable under the facts”; and (7) “settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.” Id.
In evaluating whether an insurer has acted in bad faith, the jury must consider the “totality of the circumstances.” Berges v. Infinity Ins. Co., 896 So.2d 665, 680 (Fla. 2004). Under the totality of the circumstances, the evidence must support the allegation that the insurer acted in bad faith — not simply that the insurer was negligent in some regard in handling the insured’s claim. See DeLaune v. Liberty Mut. Ins. Co., 314 So.2d 601, 602-03 (Fla. 4th DCA 1975) (citing Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938)); see also Novoa v. GEICO Indem. Co., 542 Fed.Appx. 794, 796 (11th Cir. 2013) (“To fulfill the duty of good faith, an insurer does not have to act perfectly, prudently, or even reasonably.”). As such, while evidence of an insurer’s negligence in handling a claim against its insured may be admissible to support a bad faith claim, negligence alone is insufficient to sustain a bad faith award. DeLaune, 314 So.2d at 603. An insurer’s imperfect handling of a claim does not, by itself, equate to bad faith; the essence of a bad faith claim is that the insurer put its own interests before that of the insured. See Macola v. Gov’t Emps. Ins. Co., 953 So.2d 451, 455 (Fla. 2006) (citing Allstate Indem. Co. v. Ruiz, 899 So.2d 1121, 1125 (Fla. 2005)); *815 see also Shaw, 184 So. at 859 (“[T]he insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured.”) (quoting Am. Mut. Liab. Ins. Co. v. Cooper, 61 F.2d 446, 448 (5th Cir. 1932)).
Applying the seven obligations for insurers as set forth in Boston Old Colony to this case:
(1) GEICO was obligated to “advise the insured of settlement opportunities.” Although GEICO did not immediately inform the insured that the estate wanted a statement, the evidence showed that GEICO notified the insured on August 31 that the estate wanted the insured’s statement. Significantly, the estate did not inform GEI-CO that a full settlement of its claim against the insured was contingent upon providing a statement. Thus, GEICO fulfilled this obligation.
(2) GEICO was required to “advise as to the probable outcome of the litigation,” and (3) “warn of the possibility of an excess judgment.” Here, the record reflects that GEICO promptly warned the insured as to the possibility of an excess judgment. Thus, GEICO satisfied these obligations as well.
(4) GEICO was also obligated to “advise the insured of any steps he might take to avoid” an excess judgment. The record also shows that GEICO did this too, and recommended that the insured retain his own attorney, which he did, and, as stated above, informed the insured that the estate wanted a statement.
(5) GEICO was further obligated to “investigate the facts.” Nothing in the record indicates GEICO was deficient in this regard.
(6) GEICO could not have given “fair consideration to a settlement offer” because the evidence was undisputed that the estate never made a settlement offer.
(7)Finally, GEICO was required to “settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.” Here, GEICO attempted to settle with the estate nine days after the accident by tendering, without limitation or even a demand, the full policy limits to the estate’s attorney. Thus, the evidence showed that GEICO also fulfilled this final obligation.
Consequently, GEICO fulfilled every obligation that an insurer owes the insured as announced in Boston Old Colony. Additionally, although not dispositive to our analysis, we also note that there was no competent, substantial evidence that GEI-CO, having tendered the full policy limits nine days after the accident, was “acting upon what it consider[ed] to be for its own interest alone,” Shaw, 184 So. at 859, nor did it put its own interests before that of the insured. See Macóla, 953 So.2d at 455 (citing Ruiz, 899 So.2d at 1125). As such, we find no factual basis to sustain the bad faith judgment.
The Eleventh Circuit’s opinion in Novoa supports this conclusion. In Novoa, the insurer offered the claimant the policy limits within nine days of the accident, which the claimant refused. For over two months, the insurer attempted to settle the case, but was unable to do so. After an excess judgment was entered against the insured, the insured sought to bring a bad faith claim against the insurer. Although the insured claimed that the insurer could have handled its claim better, the Eleventh Circuit court concluded that the evidence “demonstrate^] that [the insurer] could have improved its claims process, not that [the insurer] acted in bad faith.” 542 Fed. Appx. at 796. Moreover, even assuming the insurer’s handling of the claim was defi *816 cient, the mishandling would have amounted only to mere negligence and “[w]hile evidence of carelessness may be relevant to proving bad faith, Florida has expressly stated that the ‘standard for determining liability in an excess judgment case is bad faith rather than negligence.’ ” Id. (quoting Campbell v. Gov’t Emps, Ins. Co., 306 So.2d 525, 530 (Fla. 1974)). The court further noted that the insurer offered the policy limits within nine days, and the court found “it hard to imagine how [the insurer] acted in bad faith when it offered to pay everything it possibly could under the policy.” Id. See also Barnard v. Geico Gen. Ins. Co., 448 Fed.Appx. 940, 943-44 (11th Cir. 2011) (explaining that a negligent oversight does not rise to the level of bad faith).
Certainly, like the insurer in Novoa, GEICO could have acted more efficiently in handling the insured’s claim. GEICO delayed in informing the insured that the estate wanted a statement, and did not notify the estate that the insured was available to give a statement after September 5. But these facts merely show that GEICO could have perhaps “improved its claims process,” not that it acted in bad faith. Novoa, 542 Fed.Appx. at 796. Moreover, even if GEICO’s actions were negligent, negligence alone is insufficient to prove bad faith. Shaw, 184 So. at 859; DeLaune, 314 So.2d at 603.
Furthermore, the Florida Supreme Court has instructed that not only must there be actions demonstrating bad faith on the part of the insurer, but the insurer’s bad faith must also have caused the excess judgment. Perera v. U.S. Fidelity & Guar. Co., 35 So.3d 893, 903-04 (Fla. 2010). The record in this case shows that GEICO did not fail to meet any deadlines or other requirements established by the estate, as a requirement for settling the claim and avoiding the filing of a lawsuit against its insured. Also, where the insured’s own actions or inactions result, at least in part, in an excess judgment, the insurer cannot be liable for bad faith. See Barnard, 448 Fed.Appx. at 944. See also Novoa, 542 Fed.Appx. at 796-97 (finding insufficient evidence to show the insurer’s conduct caused the excess judgment when the claimant repeatedly declined every opportunity to settle, even where the claimant’s self-serving testimony was that she would have settled for 1,000 times less than the actual value of the claim).
Even assuming that GEICO handled the insured’s claim improperly, the insured failed to establish that GEICO’s conduct caused the excess judgment against the insured. Although, after the fact, the insured claimed he would have provided a statement had GEICO acted differently, the insured’s own inaction belied this after-the-fact assertion. Before the estate ever filed suit, the insured knew the estate wanted a statement, knew what the estate wanted in that statement, and had the materials to produce a statement. Further, the insured never provided a statement to the estate despite having the assistance of legal counsel for several days before suit was eventually filed. Therefore, the insured failed to show that he would have provided the requested statement but for GEICO’s purported “bad faith.”
III. Conclusion
In summary, we conclude that the trial court should have directed a verdict in GEICO’s favor, GEICO tendered the policy limits, unconditionally, nine days after the accident, and it informed the insured of the estate’s request for a statement. Although GEICO’s claims process was not without fault and could be improved, GEI-CO’s handling of the claim did not amount to bad faith as a matter of law. Additionally, even if GEICO’s handling of the claim *817 were deficient, GEICO’s conduct was not proven to cause the excess judgment against the insured.
For these reasons we reverse with instructions for the trial court to enter a judgment in favor of GEICO. Because we reverse on this issue, we find it unnecessary to address the other issues raised on appeal.

Reversed and remanded.

Gerber and Klingensmith, JJ., concur.

. The insured also sued his attorney for malpractice, but settled with him prior to trial.