710 So.2d 581 (1998)
GELCO CONVENTION SERVICES, Appellant/Cross-Appellee,
v.
Ronald G. PETTENGILL, Mary Lou Pettengill, and The Diplomat Hotel, Appellees/Cross-Appellants.
Nos. 96-2700, 96-3062.
District Court of Appeal of Florida, Fourth District.
February 11, 1998.
Rehearing Denied March 25, 1998.
Reconsideration Denied March 25, 1998.
*582 Gail Leverett Parenti of Parenti, Falk & Waas, P.A., Coral Gables, for appellant/cross-appellee.
Kathleen M. Phillips of Kaplan & Bloom, P.A., Coral Gables, for appellees/cross-appellants Ronald G. Pettengill and Mary Lou Pettengill.
PER CURIAM.
Gelco, a convention service supplier, challenges a jury verdict in favor of the Pettengills for injuries sustained by Mr. Pettengill when he was struck by a falling curtain wall divider installed by Gelco. Gelco claims that the verdict was based upon circumstantial evidence which required the pyramiding of inference upon inference, while the original inference could not be established to the exclusion of all other reasonable inferences. We agree that the directed verdict should have been granted and therefore reverse.
Mr. Pettengill and another man, Mr. Wolcott, attended a seminar in the auditorium at the Diplomat Hotel. The room was separated by a curtain wall divider, and the two men stepped around to the other side of the curtain wall so that they could talk business. They stood approximately 10 feet from the curtain wall. The curtain wall fell the length of the auditorium, and a drape and pole landed on Mr. Pettengill. Neither man saw or knew what caused the fall, and neither heard anything before the curtain wall fell. They had not hit the curtain or walked through an opening in the curtain prior to the fall of the curtain wall.
The curtain wall (100 feet of 16 foot high black drape) consisted of metal bases and vertical and horizontal components. The vertical components fit into the bases while the horizontal components hooked to the tops of the vertical components, and the drapes hung on the horizontal components. Although there was no direct evidence of the exact equipment used on the day of the incident, Gelco presented testimony that 24" by 24" bases were used when hanging a 16' high drape, as compared to the 12" by 12" bases used for a 8' high drape. Gelco's president assumed that 24" by 24" bases were used at the hotel. The Pettengills, however, presented the testimony of a laborer who had previously worked for Gelco, although not on this job. He admitted that *583 he had no personal knowledge of the equipment used at the hotel on the date of Mr. Pettengill's injury. However, he testified that there was defective equipment in Gelco's inventory, such as broken hooking mechanisms on horizontal components, leading to the instability of the horizontal components, and that this equipment was used in installations. The laborer also testified that 24" by 24" bases were not used often, even though they should be used to install a 16' high drape, and that contractors such as Gelco do not have many of them. He further stated that windy conditions or someone running into the curtain wall could cause a 12" by 12" base to tip over if it was not properly weighted down, whereas it would take "a lot" for a curtain wall to tip over (such as someone really leaning on it) if a 24" by 24" base were used with proper equipment.
The Pettengills' engineering expert did not know what caused the curtain wall to fall, but testified that it could have fallen for a number of reasons, such as air currents blowing against the curtain or a concentrated force being applied to a drape or a vertical component. According to his calculations, to tip over a 16' high drape mounted on a 12" by 12" base one would need a wind speed of 2.1 miles per hour or a concentrated force of 3 pounds. To tip over a 16' high drape mounted on a 24" by 24" base one would need a wind speed of 4 miles per hour or a concentrated force of 10.2 pounds. Assuming that the drape fell down without a substantial push, he opined that it was entirely likely a 12" by 12" base was used. He further stated that a 12" by 12" base would be unsatisfactory to support 100 feet of 16' high drape.
The Pettengills presented evidence that Gelco had a contractual duty to maintain the curtain wall in a safe condition. However, Gelco's president testified that after Gelco installed the curtain wall, the hotel could remove it, lift it, shift it, do anything that the hotel wanted to do with it, and that the hotel would have to set the curtain wall back up if it fell. He assumed that the hotel took control over the curtain wall and that Gelco did not continue to supervise the wall. After the denial of the directed verdict, the jury returned a verdict in favor of the Pettengills. Gelco appeals from this verdict.
In this case, the plaintiffs relied on circumstantial evidence to prove Gelco's negligence. As the supreme court explained in Nielsen v. City of Sarasota, 117 So.2d 731, 733 (Fla.1960):
[I]n a civil case, a fact may be established by circumstantial evidence as effectively and as conclusively as it may be proved by direct positive evidence. The limitation on the rule simply is that if a party to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.
To support the verdict, the first inference which must be drawn from the circumstantial evidence was that Gelco was negligent, as there was no direct evidence of this. The mere occurrence of an accident, without more, does not give rise to an inference of negligence. See, e.g., Marcano v. Puhalovich, 362 So.2d 439 (Fla. 4th DCA), dismissed, 365 So.2d 714 (Fla.1978); Cooper Hotel Servs., Inc. v. MacFarland, 662 So.2d 710 (Fla. 2d DCA 1995), rev. denied, 670 So.2d 939 (Fla.1996).
Essentially, the Pettengills relied on two possible theories of negligence: first, that Gelco was negligent in its use of defective equipment (horizontal components with broken hooks), and second, that Gelco was negligent in its use of improper equipment (a 12" by 12" base for 16' high drape). There was no testimony from someone with personal knowledge of the equipment used for this particular curtain wall. An employee merely testified that Gelco had some defective equipment and had few 24" by 24" bases. Therefore, the initial inference that Gelco used defective equipment cannot be established to the exclusion of all other reasonable inferences. We also agree with Gelco that the Pettengills' engineering expert's testimony, that Gelco used 12" by 12" bases, cannot be relied upon to establish an inference of negligence to the exclusion of all other reasonable *584 inferences, because he based his opinion on the assumption that the fall was not due to a substantial force applied to the curtain wall. There is no testimony as to what, if any, force precipitated the fall; all that Mr. Pettengill and Mr. Wolcott could say was that they did not hear anything prior to the fall. They were not aware of what was going on on the other side of the curtain wall. The initial inference that the fall of the curtain was not due to considerable force cannot be established to the exclusion of other reasonable inferences. Thus, the Pettengills did not establish the initial inference to the level of certainty required in Neilsen in either situation.
The third district faced a similar issue in McCormick Shipping Corp. v. Warner, 129 So.2d 448 (Fla. 3d DCA 1961). In that case, the plaintiff fell from a ladder to her bunk bed while on a cruise shipalthough she had used the ladder previously without incident, on this particular occasion, when she put her foot on the ladder, it moved, and she fell. The plaintiffs did not present direct evidence that the ladder was defective. The third district wrote:
There is an absence of any evidence relating the movement of the ladder to the alleged breach of duty on the part of the appellant and, under such circumstances, to permit the case to go to the jury invited speculation and conjecture on their part as to how the accident occurred. There is no question that the movement of the ladder was the immediate cause of the appellee's fall, but there is nothing in this record to show why it moved. The jury was required under the circumstances to infer that there was negligence on the part of the appellant in providing a defective or inadequate ladder and upon that inference, to infer further that such negligence was the proximate cause of the fall. Clearly the record does not support the conclusion that the initial inference was justified to the exclusion of any other reasonable inferences and therefore, the rule prohibiting the finding of an ultimate fact on an inference based upon an inference controls.
Id. at 449-50 (citations omitted)(emphasis added); see also Green House, Inc. v. Thiermann, 288 So.2d 566 (Fla. 2d DCA 1974).
As Gelco points out, the Pettengills would need to stack multiple inferences to support their cause of action. Either the jury would have to infer that (1) Gelco used defective equipment and (2) the curtain wall fell because of the defective equipment, or it would have to infer that (1) Gelco used 12" by 12" bases, (2) a minimal force was applied which caused the fall of the curtain wall, and (3) minimal force would have had no effect on a proper 24" by 24" base. This amounts to the impermissible pyramiding of inferences.
Since the Pettengills failed to prove the existence of the original inferred fact to the exclusion of all other reasonable inferences, we conclude that the trial court erred in failing to grant a directed verdict in Gelco's favor. Finding no error in the point on cross-appeal, we therefore reverse and remand with directions to enter judgment in favor of Gelco. Accordingly, we also reverse the trial court's order awarding costs to the appellees. See Chabad House-Lubavitch of Palm Beach County, Inc. v. Banks, 609 So.2d 780 (Fla. 4th DCA 1992).
STONE, C.J., WARNER, J., and PARIENTE, BARBARA J., Associate Judge, concur.