DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DAVIE PLAZA, LLC,**
Appellant,

v.

**EMMANUEL IORDANOGLU,** as personal representative of the
Estate of **MIKHAEL MAROUDIS,**
Appellee.

No. 4D16-1846

[December 13, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. 11-004370CACE13.

Hinda Klein of Conroy Simberg, Hollywood, and Jan D. Langer of the Law Office of Hugh Behan, Hollywood, for appellant.

Philip M. Burlington and Adam J. Richardson of Burlington & Rockenbach, P.A., West Palm Beach, and John F. Billera of Billera Law, PLLC, Boca Raton, for appellee.

WARNER, J.

Davie Plaza, LLC appeals a final judgment in a premises liability case involving the plaintiff's fall from a ladder. The plaintiff's estate claimed that the fall was due to defects in the premises. Davie Plaza contends that the court erred in denying its motion for directed verdict, when the evidence presented by the plaintiff failed to establish the cause of the fall or even precisely where the fall occurred. We agree that the circumstantial evidence was insufficient and the court erred in denying the motion. We reverse for a judgment in favor of Davie Plaza.

Davie Plaza owned a shopping center which included space leased by 84 Diner, its tenant. In 2007, Mikhael Maroudis, the plaintiff, worked for 84 Diner as a handyman. One night in June of that year, the supervisor of the diner asked Maroudis to go up on the roof to clear water, as the roof was leaking into the restaurant. The diner's roof had two levels. In order

to get to the area which was leaking, Maroudis had to ascend to the first level of the roof over part of the kitchen, haul up the ladder, and then ascend to the upper part of the roof where the water was collecting. After clearing the water, Maroudis descended from the upper roof and then repositioned the ladder to descend from the lower roof to the ground. As he descended he fell backwards to the ground, causing serious injuries.

In 2011, Maroudis filed suit against Davie Plaza alleging his status as a business invitee on the property. The suit alleged that the property had a latent defect in the premises, namely "uneven, cracked and defective exterior walkway/parking lot located in the area where [Maroudis] placed his ladder." Maroudis alleged the uneven area "collapsed underneath the foot of [Maroudis's] ladder, causing him to fall." During the course of the proceedings, Maroudis testified regarding the incident at several depositions, and he also gave a recorded statement. The statement and depositions were used at trial, because Maroudis died of unrelated causes in 2013, and his estate was substituted as the party plaintiff.

At trial, through the depositions, Maroudis testified that when his supervisor directed him to go up on the roof to clear the water, it was dark and rain had started to fall. He went out the back of the restaurant to see how he could get up to the higher roof. He then used the diner's twelve-foot A-frame ladder. Instead of opening it as he normally would, he leaned the ladder against the side of the building, and he ascended the ladder to the first roof. He then pulled up the ladder and leaned it against the wall leading to the second roof. He ascended both levels without incident. After completing his task, he descended the ladder to the first roof. From the first roof, he then repositioned the ladder on the ground, again leaning it against the building. As he descended it, he fell backwards landing on the cement, causing injuries.

Maroudis testified that he placed the ladder on a concrete surface to the right side of the door as he exited, which would be the left side of the door as one faced it from the exterior. This corresponds to the testimony of his friend at trial, who went by the diner with him sometime after the fall. At that time Maroudis identified the area where he fell, which the witness pointed out was to the left of the door when viewed from the exterior. Pictures entered as exhibits also confirm that a concrete sidewalk is to the left of the door as viewed from the exterior. Maroudis did not look at the ground as he placed the ladder, but he made sure that it was secure by moving it left to right. Although he usually had spotters when he was on a ladder, he did not use one that night. He did not open the A-frame ladder and did not observe any defects in the ladder.

2

When he was placing the ladder on the ground to descend from the roof, he again leaned it against the building and checked the security of the ladder with his hands. He went down two steps when he lost his balance and fell backwards and to the left side. He testified that he did not know what made him fall, "maybe the floor." As to the ground, he noted that the area was not defective or broken but was not completely smooth and flat. Later in the same deposition, he looked at a picture and identified an area several feet from the door as covered in asphalt. He then testified that both feet of the ladder were on the asphalt. Then he stated that he placed the ladder on the dividing line between the asphalt and concrete. He said he placed his ladder within one foot of the door both going up and coming down. And after looking at the picture, he indicated that the area in the picture looked as though it had changed since the date of his fall.

At his deposition, the picture which he was viewing was not identified. Other pictures admitted into evidence showed a concrete sidewalk on the left side of the door and a sloping concrete pad which ends at a grate several feet from the door. The property manager for Davie testified in her deposition that asphalt covered the area where the grates were now pictured.

An expert on code violations testified for the Estate. He was asked to assume that the area in the vicinity of the accident had not changed since the time of Maroudis's fall. He testified that he saw many uneven surfaces in the area which were code violations. However, he never testified as to the cause of the fall. During cross-examination, he admitted that he did not know where Maroudis placed the ladder, as Maroudis had testified to different places in his deposition, including on concrete, on asphalt, and on the dividing line between concrete and asphalt. The expert noted that there was no asphalt upon his inspection. While he did not think that Maroudis's use of the A-frame ladder without opening it was necessarily improper, he also did not know the angle at which Maroudis would have placed the ladder. In his direct testimony he explained that the angle of the ladder would affect its stability. Further, he never saw the ladder, so he could not rule out a defect in the ladder. In sum, the expert did not give any opinion as to the cause of the fall. A defense expert testified that the use of the A-frame ladder was improper. He also determined that the area to the left of the door where Maroudis testified he placed his ladder was not an area of defective concrete, but if the feet were placed near the crack between the grate and the concrete, the ladder would have been at an improper angle.

Davie Plaza moved for directed verdict at the close of the Estate's case and at the close of all the evidence, contending that the Estate's case consisted of stacking inference upon inference. Because the Estate could not show precisely where Maroudis placed his ladder when descending from the roof, it could not show that he placed it in an area of the ground that was dangerous or uneven. Further, an equally reasonable inference was that the angle at which he leaned the unopened ladder against the building caused it to be unsteady. The court denied the motions. The jury returned a verdict in favor of the Estate, awarding an extraordinarily high amount of damages. Davie Plaza renewed its motion for directed verdict in post-trial motions, but it was again denied. From the final judgment, Davie Plaza appeals.

An order denying a motion for directed verdict is reviewed de novo. *Geico v. Harvey*, 208 So. 3d 810, 814 (Fla. 4th DCA 2017). The "appellate court must view the evidence and all inferences in a light most favorable to the non-movant, and should reverse if no proper view of the evidence could sustain a verdict in favor of the non-movant." *Weinstein Design Grp., Inc. v. Fielder*, 884 So. 2d 990, 997 (Fla. 4th DCA 2004).

The standard jury instructions set for the required elements of proof in a premises liability claim are:

> [W]hether (defendant) [negligently failed to maintain [its] premises in a reasonably safe condition], [or] [negligently failed to correct a dangerous condition about which (defendant) either knew or should have known, by the use of reasonable care,] [or] [negligently failed to warn (claimant) of a dangerous condition about which (defendant) had, or should have had, knowledge greater than that of (claimant)]; and, if so, whether such negligence was a legal cause of [loss] [injury] or [damage] to (claimant, decedent or person for whose injury claim is made).

Fla. Std. Jury Inst. (Civ.) 401.20 (asterisk deleted). Davie claims that the Estate failed to prove that any negligence on its part was a legal cause of injury to Maroudis. The Estate's case was based on circumstantial evidence, as Maroudis did not know what made him fall.

To prove a prima facie case of negligence and an ultimate fact, such as proximate cause, circumstantial evidence can be used "as effectively and as conclusively" as direct positive evidence, but if a party

> depends upon the inferences to be drawn from circumstantial

4

evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences.

*Nielsen v. City of Sarasota*, 117 So. 2d 731, 733 (Fla. 1960). Davie Plaza argues that the initial inference that Maroudis placed his ladder on an uneven surface or defect in the premises was never proved to the exclusion of other reasonable inferences, because the Estate could not establish where Maroudis placed his ladder, and he did not know what made him fall. Other equally reasonable inferences could be made as to why he may have fallen.

We agree with Davie that the Estate did not and could not establish the initial inference to the exclusion of all other inferences precisely because of Maroudis's conflicting testimony regarding where he placed the ladder when descending to the ground. At first, he testified that he placed it to the left of the exit door on concrete. Both the Estate expert as well as the defense expert agreed that the area was level, although the Estate expert contended that it was a very narrow area before it sloped away from the building. But later Maroudis said both feet of the ladder were on asphalt, which the experts discounted because they had seen no asphalt and had assumed that there had been no changes to the property since the accident. However, the property manager testified that asphalt used to be in the place of where a grate appeared in the pictures exhibited to the jury. Maroudis himself noted that the pictures he was shown at his deposition appeared as though the area had changed. If he had placed both feet on where the grate was, which was formerly covered with asphalt, then the angle at which the ladder would have been placed would have been improper. Moreover, no one could testify that the asphalt, which was no longer present, was a dangerous condition. Nor could anyone testify that the crack between the asphalt and the concrete, another place Maroudis said he placed his ladder, was defective. And no one, not even Maroudis, testified to the veracity of the allegation of the complaint that an uneven area "collapsed" under the foot of the ladder. Furthermore, Maroudis testified that he checked the ladder to determine that it did not move before descending, thus also negating the inference that he placed the ladder on an uneven surface, causing him to fall.

In short, the inference that Maroudis placed his ladder on a defect in the premises cannot be made to the exclusion of all other reasonable inferences. He could have placed his ladder on even concrete to the left of the door. Or he could have placed his ladder on asphalt but at an improper

angle. In either case, no defect in the premises would be a cause of the fall. Absent clarity as to where Maroudis placed the ladder, one can only speculate where the ladder was placed, and thus, whether a defect in the premises at that location was even present. A finding of liability cannot be based on such speculation.

This case is somewhat similar to *Miller v. Aldrich*, 685 So. 2d 988, 989 (Fla. 5th DCA 1997), where the plaintiff was injured when he fell off a ladder while working at a homeowner's residence, there were no witnesses, and the plaintiff testified he had "no idea of what happened." The Fifth District concluded the trial court correctly granted summary judgment for the defendants because "[t]he fact that an accident occurred does not, in an ordinary case, establish breach of a duty by another party, or causation." *Id.* at 990. On the day before the accident, the defendant saw the plaintiff "shimmying the ladder side to side while standing on it, in order to move it," and he warned the plaintiff to not use the ladder improperly. *Id.* at 989. The Estate argues *Miller* is distinguishable because, in that case, there was no evidence that the ladder was defective or that the homeowner was negligent in another way, whereas here, there is evidence of Davie Plaza's code violations. However, a plaintiff must show both the defendant's breach of a duty and how that breach proximately caused the plaintiff's injuries. *Id.* at 989-90. Without knowing that the ladder was placed upon a defective condition in the premises, causation cannot be established. *See also Gelco Convention Servs. v. Pettengill*, 710 So. 2d 581, 582-84 (Fla. 4th DCA 1998); *Hurst v. Astudillo*, 631 So. 2d 380, 381 (Fla. 3d DCA 1994).

The Estate most strongly relies on *Ortiz v. Lorie*, 921 So. 2d 868, 869 (Fla. 4th DCA 2006), where the plaintiff fell off a ladder while cleaning the defendant homeowner's roof and could not remember why the accident happened. The ladder had been supplied to him by the homeowner. *Id.* Plaintiff sued on a theory of negligence that a principal has a duty to assure that any instrumentalities which it provides to an independent contractor are reasonably safe for use. *Id.* at 870. An expert testified by way of affidavit that he could look at pictures of the ladder and conclude that it was improperly assembled, and thus, defective. *Id.* at 869. We reversed a summary judgment granted to the homeowner because of the evidence of defect in the ladder, despite the plaintiff's inability to remember the accident, where the circumstantial evidence showed that the ladder was defective, and the plaintiff fell while on the defective ladder. *Id.* at 870-71. For purposes of summary judgment, where it is the duty of the homeowner to either conclusively refute his own negligence or show that the plaintiff's negligence was the sole proximate cause of his injuries, the defendant had not carried that burden. *Id.* The Estate analogizes *Ortiz* to

this case, contending that the mere fact that Maroudis did not know what made him fall does not defeat his cause of action. While we agree with that contention, in *Ortiz* the plaintiff showed that he had been supplied with a defective ladder and he fell, thus establishing the elements of the cause of action. The homeowner had not negated his own negligence nor shown that the fall was due solely to the plaintiff's own negligence. Here, on the other hand, while the Estate may have shown defects in the premises, it did not show that Maroudis placed the ladder on a defective condition in the premises. This initial inference was not proved to the exclusion of all other inferences.

*Ortiz* relied on *Majeske v. Palm Beach Kennel Club*, 117 So. 2d 531 (Fla. 2d DCA 1959), also a summary judgment case, where the plaintiff fell while descending stairs at a dog track, although she did not remember the cause of the fall. An architect testified that the stairs were of varying height which an architect opined created a dangerous condition. *Id.* at 532. In reversing a summary judgment, the supreme court determined that the fact that the plaintiff could not remember the fall would not defeat her claim. *Id.* at 533-34. Evidence that she was descending stairs which the expert opined constituted a dangerous condition was sufficient to state a prima facie case. *Id.* at 534. Just as the plaintiff in *Ortiz* was descending the defective ladder, the plaintiff in *Majeske* was descending the stairs which were in the dangerous condition. In contrast, the inference that Maroudis placed the ladder on a defect in the premises cannot be made to the exclusion of other equally reasonable inferences.

For the foregoing reasons, we conclude that the trial court erred in denying the motion for directed verdict. We reverse and remand for entry of judgment for appellant Davie Plaza. Because of our disposition on the directed verdict, we do not address the remaining issues raised.

LEVINE, J., and BUCHANAN, LAURIE E., Associate Judge, concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***