944 So.2d 440 (2006)
CDS HOLDINGS I, INC., et al., Appellants,
v.
CORPORATION COMPANY OF MIAMI, Appellee.
No. 3D05-2576.
District Court of Appeal of Florida, Third District.
November 15, 2006.
Rehearing Denied January 3, 2007.
*441 Anthony Accetta; Rosemary Wilder, for appellants.
Murai, Wald, Biondo, Moreno & Brochin and Gerald B. Wald and Allen P. Pegg, for appellee.
Before WELLS, CORTIÑAS, and ROTHENBERG, JJ.
CORTIÑAS, Judge.
The appellants, CDS Holdings I, Inc., CDS Holdings II, Inc., and Christine Marchesa Serra (collectively "defendants"), appeal the orders denying their post-trial motions for a new trial and a renewed directed verdict. We affirm.
Christine Marchesa Serra ("Marchesa Serra") was the founder and president of two corporations, CDS Holdings I, Inc. ("CDS I") and CDS Holdings II, Inc. ("CDS II"). CDS I and CDS II were created by Marchesa Serra to purchase and develop real property ("the property") located in Miami, Florida. During 1996-1999, Marchesa Serra, in her individual capacity, as well as CDS I and CDS II, were involved in a lawsuit ("the underlying lawsuit") regarding title to the property.
Although Marchesa Serra was already represented by counsel, she retained Shutts & Bowen LLP ("Shutts & Bowen") to assist her with the underlying lawsuit. In July 1999, Marchesa Serra signed an engagement letter ("the engagement letter") which expressly stated that Shutts & Bowen was being hired to represent CDS I, CDS II, and Marchesa Serra in the underlying lawsuit. After three years of maintaining a good working relationship and paying over $2.0 million in attorneys' fees, Marchesa Serra stopped paying Shutts & Bowen's invoices. Consequently, after several months of non-payment, Shutts & Bowen withdrew as counsel in all matters involving Marchesa Serra.
Thereafter, Shutts & Bowen assigned its claim for $252,888.30 in unpaid attorneys' fees to Corporation Company of Miami ("CCM"), a company controlled by Shutts & Bowen. CCM brought an action against the parties in the engagement letter, namely Marchesa Serra, CDS I, and CDS II, for the unpaid fees. A jury found each of the defendants breached a contract with Shutts & Bowen by failing to pay for the legal services and CCM was awarded $221,796.54. At the conclusion of the trial, the defendants moved for a directed verdict and for a new trial. However, the trial court denied both of the defendants' post-trial motions.
On this appeal, the defendants claim that the trial court's refusal to give a special interrogatory verdict form that apportioned liability for damages among each defendant constituted reversible error and requires a new trial. Specifically, the defendants *442 argue that by providing one damage interrogatory, the verdict form allowed the jury to impose joint and several liability. Additionally, the defendants claim that the trial court's denial of a motion in limine to exclude a dismissed rule to show cause order ("the order") from a different lawsuit, resulted in the admission of improper character evidence which also warrants a new trial.
The decision on whether to include a special interrogatory form is within the trial court's discretion. Triana v. FI-Shock, Inc., 763 So.2d 454, 457-58 (Fla. 3d DCA 2000) (citing Goldschmidt v. Holman, 571 So.2d 422, 425 (Fla.1990)). Moreover, absent prejudicial error, decisions concerning special verdict forms should not be disturbed on appeal. Id. In this regard, we have found that "[p]rejudicial error requiring reversal of judgment or new trial occurs only where the error complained of has resulted in a miscarriage of justice[, which] . . . arises where instructions are reasonably calculated to confuse or mislead the jury." Id. at 458 n. 8 (quoting Rucker v. Garlock, Inc., 672 So.2d 100, 101 (Fla. 3d DCA 1996)).
We find that the trial court acted within its discretion in denying the defendants' special interrogatory verdict form, and that the use of the verdict form at issue did not result in a miscarriage of justice. While the verdict form contained only one damage interrogatory, it also separately asked whether there was a contract between Marchesa Serra and Shutts & Bowen, and separately asked whether there was a contract between CDS I and CDS II and Shutts & Bowen. Notably, the defendants' reliance on ITD Industries, Inc. v. Business Resource Group, Inc., 779 So.2d 532 (Fla. 2d DCA 2000), is misplaced. In ITD, the trial court itself found that if there was liability under the contract, the president was automatically liable in his corporate capacity. Id. at 534. Conversely, in this case, the jury was separately asked whether there was a contract between Shutts & Bowen and each individual defendant. Cf. id. (holding that the trial court abused its discretion by presenting the jury with a verdict form which "delineated joint and several liability").
Furthermore, here, once the jury answered the questions delineating liability in the affirmative, the remaining question of who among the defendants was responsible for what portion of the damages was already answered by the terms of the engagement letter. As previously discussed, the clear and unambiguous terms of the engagement letter provide that Shutts & Bowen would represent all three defendants collectively. Specifically, the engagement letter also states that "[y]ou agree to pay Shutts & Bowen for all legal services rendered by us." Additionally, at trial, an attorney from Shutts & Bowen testified that the parties agreed that the terms of the engagement letter would also govern all subsequent matters involving any representation of the defendants. Therefore, contrary to the defendants' argument, once the jury found that all three defendants had contracted to pay Shutts & Bowen's legal fees, the jury did not need to apportion the liability among them.
Turning to the defendants' second point on appeal, we find that the trial court properly denied the defendants' motion in limine to exclude the order against Marchesa Serra. Here, the order was directly relevant to Marchesa Serra's principal affirmative defense that she was not personally liable for the attorneys' fees. The order had been entered against Marchesa Serra individually as a co-defendant in the underlying lawsuit. Thus, the order was properly admissible to rebut Marchesa Serra's testimony at trial that CDS I and CDS II, as opposed to herself *443 individually, were involved in the underlying lawsuit.
The defendants also claim that the trial judge erred in denying their motion for a directed verdict on two issues. First, the defendants allege that CCM failed to prove that Shutts & Bowen validly assigned its claim, and, therefore, CCM had no standing to bring suit. Second, the defendants allege that CCM failed to present sufficient evidence to pierce CDS I and CDS II's corporate veil and impose personal liability on Marchesa Serra.
A party moving for a directed verdict admits the truth of all the facts stated in the evidence presented and also admits every conclusion favorable to the nonmoving party that a jury might reasonably infer from the evidence. State Farm Mut. Auto. Ins. Co. v. Resnick, 636 So.2d 75, 76 (Fla. 3d DCA 1994)(citing Nelson v. Ziegler, 89 So.2d 780, 782 (Fla.1956)). Furthermore, "[a] motion for directed verdict must be denied if the evidence presented is conflicting or different conclusions can be drawn from it." Id. (quoting Azar v. Richardson Greenshields Sec., Inc., 528 So.2d 1266, 1269 (Fla. 2d DCA 1988)).
In the instant case, the trial court properly denied the defendants' motion for a directed verdict on both issues. The record reflects that at trial an attorney from Shutts & Bowen testified regarding the assignment of the attorneys' fees to CCM. In contrast, there is no record evidence to support the defendants' allegation that CCM only had a right to collect, but not the right to retain or control the attorneys' fees. Moreover, contrary to the defendants' argument, Shutts & Bowen introduced at trial the terms of the engagement letter as evidence that Marchesa Serra was personally liable for the fees in question. Because the jury could reasonably draw different conclusions from this evidence, we find no error in the trial court's denial of the defendants' motion for a directed verdict on the issues of the validity of the assignment and piercing the corporate veil.
Accordingly, we affirm the trial court's orders denying the defendants' post-trial motions and the judgment in Shutts & Bowen's favor.
Affirmed.