QUINCE, J.
*3 This case involves the application of the law of bad faith, which imposes a fiduciary obligation on an insurer to protect its insured from a judgment that exceeds the limits of the insured's policy. The specific issue in this case is whether the Fourth District Court of Appeal misapplied this Court's bad faith precedent and relied on inapplicable federal precedent when it reversed the judgment entered in favor of the insured after a jury found that the insurer acted in bad faith in failing to settle the claim. GEICO Gen. Ins. Co. v. Harvey , 208 So.3d 810, 812 (Fla. 4th DCA 2017). The Fourth District concluded that "the evidence was insufficient as a matter of law to show that the insurer acted in bad faith," and, "even if the insurer's conduct were deficient, the insurer's actions did not cause the excess judgment." Id. We have jurisdiction based on the Fourth District's misapplication of our bad faith precedent as set forth in Boston Old Colony Insurance Co. v. Gutierrez , 386 So.2d 783 (Fla. 1980), and, more recently, in Berges v. Infinity Insurance Co. , 896 So.2d 665 (Fla. 2004).[1]
For the reasons that follow, we conclude that the Fourth District erred in holding that the evidence was insufficient to show that the insurer acted in bad faith in failing to settle the insured's claim. In reaching this erroneous conclusion, the Fourth District failed to properly apply the directed verdict standard and misapplied this Court's precedent in Boston Old Colony and Berges , where we set forth the fiduciary duties of insurance companies toward their insureds. We also conclude that the Fourth District misapplied our precedent when it stated that an insurer cannot be liable for bad faith "where the insured's own actions or inactions ... at least in part" caused the excess judgment. Harvey , 208 So.3d at 816. Not only did the Fourth *4 District misapply our well-established bad faith precedent but it relied, in part, on nonbinding federal cases that cannot be reconciled with our clear precedent. Accordingly, we quash the Fourth District's decision and remand with instructions to reinstate the final judgment.
FACTS AND PROCEDURAL HISTORY
The Underlying Accident
On August 8, 2006, Petitioner James Harvey, the insured, was involved in an automobile accident with John Potts. Potts, who was 51 years old at the time of the accident, died from injuries sustained in the crash, leaving behind a wife and three children. Harvey's vehicle was registered in both his name and his business's name, and was covered under a $100,000 liability policy. The accident was reported to his insurer, Respondent GEICO, and the claim was assigned to Fran Korkus, a claims adjuster.
The Claims Process
Two days after the accident, on August 10, GEICO resolved the liability issue adversely to Harvey. GEICO was aware that there was significant financial exposure to Harvey because Potts had died leaving multiple survivors and Harvey's insurance coverage was only $100,000. On August 11, Korkus sent Harvey a letter explaining that Potts' claim could exceed his policy limits and that he had the right to hire his own attorney.
Vivian Tejeda, a paralegal employed by the attorney representing Potts' estate, called Korkus on August 14 and requested a statement from Harvey. Tejeda explained that a recorded statement from Harvey was necessary to determine the extent of his assets, whether he had any additional insurance, and if he was in the course and scope of his employment at the time of the accident. Significantly, Korkus did not immediately communicate the request to Harvey, and, according to Tejeda, Korkus denied the request.
Three days later, GEICO tendered the full amount of the policy limits to the estate's attorney, Sean Domnick, along with a release and affidavit of coverage. In response, Domnick wrote a letter to Korkus, acknowledging receipt of the check and Korkus's refusal to make Harvey available for a statement. Korkus received this letter on August 31 and faxed it to Harvey, who learned for the first time that a statement had been requested.
That same day, Korkus contacted Domnick regarding the requested statement. After the conversation, Domnick faxed a letter confirming the scope of the conversation:
This confirms our conversation in which you told me that you had received our recent letter regarding this matter. You asked me why we wanted a statement from Mr. Harvey . I told you that it was for the same reason that Ms. Tejeda outlined previously as well as that referenced in my recent letter . We want to determine what other coverage or assets may be available to cover this incident. You were unable to confirm that he would be available for a statement.
(Emphasis added.) Korkus did not respond to the letter.
The next day, September 1, Harvey called Korkus to discuss Domnick's letter. Harvey told Korkus that he planned to meet with his attorney, whom he had hired at Korkus's suggestion, to review his financial documents and provide the information requested, but advised Korkus that his attorney would not be available until September 5. Korkus documented the call in the following activity log entry:
*5 Received call from insured. He received the fax. Said his company attorney Pat Geraghty is not available until Tuesday after the holiday weekend. Insured does not want claimant attorney to think we are not acting fast enough and asked what we can do to let the claimant's attorney know we are working on this . I told insured that we will discuss letter with management and get back to him. Insured requested I fax him a copy of any response before it's sent.
(Emphasis added.) Korkus's supervisor specifically instructed Korkus to relay Harvey's message to Domnick. Korkus did not.
On September 13, 2006, approximately one month after Tejeda's initial request for a statement, the estate returned GEICO's check and filed a wrongful death suit against Harvey. The wrongful death action was tried before a jury that found Harvey 100% at fault and awarded the estate $8.47 million in damages. A judgment in favor of the estate was entered against Harvey for the full amount of damages.
Harvey's Bad Faith Action
Harvey filed a bad faith claim against GEICO based on the judgment that exceeded his policy limits of $100,000. At the trial on Harvey's bad faith claim, Domnick, the lawyer for the estate, testified that he did not receive any communication from GEICO following his August 31 letter. He also testified that had he known that Harvey's only other asset was a business account worth approximately $85,000, he would not have filed suit and would have instead advised the estate to accept the policy limits. Korkus, the insurance adjuster, conceded during her testimony that it was reasonable for Domnick to request information about whether Harvey had other insurance coverage and the extent of his assets, testifying that plaintiff's attorneys asked for that information "all the time." GEICO's expert, John Atkinson, also testified that Domnick needed that information to properly advise the estate regarding settlement. Tracey Potts, wife of the decedent, testified that if Domnick had recommended that she settle, she would have followed his advice and accepted the policy limits offered by GEICO.
Daniel Doucette, an expert in bad faith, testified that a serious claim such as this one would require "a sense of urgency" on behalf of the insurer. He stated that it would have been in Harvey's best interests for Korkus to inform Domnick that he had retained an attorney, as this would have facilitated the recorded statement. Doucette also explained that because GEICO was handling the claim, Harvey could not contact Domnick directly. Instead, Harvey had to use Korkus as "a go-between given his duty to cooperate with his insurer."
In addition to this expert testimony, Harvey presented evidence which showed that Korkus had a history of struggling to manage her files. At the time of Harvey's claim, Korkus was handling approximately 130 claims. Her personnel file showed that she had trouble managing her claims properly, which included communication failures. In a performance appraisal from 2005, a year before Harvey's accident, a performance review indicated that "[her] productivity numbers fell below average ... there is now exposure to our insured and to GEICO for extra contractual damage ... [and she] could use help with her organizational skills, filtering her emails, along with organizing her desk." A year later, another performance review stated that Korkus "has struggled throughout the year with desk management, which is magnified in her low file quality rating."
At the conclusion of Harvey's case, GEICO moved for directed verdict, which the trial court denied. In a special verdict, the jury found that GEICO acted in bad faith *6 and the trial court entered judgment in favor of Harvey in the amount of $9.2 million. GEICO's motion for a judgment notwithstanding the verdict was denied.
GEICO appealed, arguing that Harvey "offered insufficient evidence at trial to support his bad faith claim." Harvey , 208 So.3d at 814. The Fourth District agreed and reversed, concluding that "the evidence was insufficient as a matter of law to show [GEICO] acted in bad faith" in failing to settle the claim against Harvey. Id. at 816. The Fourth District further concluded that "even if the insurer's conduct were deficient, the insurer's actions did not cause the excess judgment rendered against the insured." Id. at 812.
ANALYSIS
Harvey argues that the Fourth District's decision was erroneous for two reasons. First, Harvey asserts that the Fourth District erred in granting a directed verdict in favor of GEICO on his bad faith claim because he presented sufficient evidence to support his claim. Second, Harvey contends that the Fourth District erred in concluding that an insurer cannot be found liable when the insured's own conduct "at least in part," results in an excess judgment. Id. at 816. Because this case involves an order entered on a motion for directed verdict our review is de novo. Christensen v. Bowen , 140 So.3d 498, 501 (Fla. 2014). "When reviewing a trial court's ruling on a motion for directed verdict, this Court views the evidence and all inferences of fact in the light most favorable to the nonmoving party." Id.
We begin by explaining the bad faith law of this state, as set forth by this Court first in Boston Old Colony , and more recently in Berges . We then turn to this case, where we first address the Fourth District's conclusion that the evidence is insufficient to support the jury's finding that GEICO acted in bad faith in failing to settle the estate's claim against Harvey. We then address the Fourth District's conclusion that an insurer cannot be found liable for bad faith where the excess judgment was caused in part by the insured.
I. Bad Faith
We have explained that "[b]ad faith law was designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims." Berges , 896 So.2d at 682. Thus, "[b]ad faith jurisprudence merely holds insurers accountable for failing to fulfill their obligations, and our decision does not change this basic premise." Id. at 683.
Almost four decades ago, we explained the law of bad faith and the good faith duty insurers owe to their insureds in handling their claims, which still holds true today. See Boston Old Colony , 386 So.2d at 785. We explained that "in handling the defense of claims against its insured," the insurer "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." Id. This duty arises from the nature of the insurer's role in handling the claim on the insured's behalf-because the insured "has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured." Id. We explained in great detail what this duty requires of insurers:
This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of *7 the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.
Id. (citations omitted).
We reaffirmed this duty insurers owe to their insureds in Berges , stating that the insurer "owe[s] a fiduciary duty to act in [the insured's] best interests." 896 So.2d at 677. Indeed, "this is what the insured expects when paying premiums." Id. at 683.
The obligations set forth in Boston Old Colony are not a mere checklist. An insurer is not absolved of liability simply because it advises its insured of settlement opportunities, the probable outcome of the litigation, and the possibility of an excess judgment. Rather, the critical inquiry in a bad faith is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment. "[T]he question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." Id. at 680. Further, it is for the jury to decide whether the insurer failed to "act in good faith with due regard for the interests of the insured." Boston Old Colony , 386 So.2d at 785. This Court will not reverse a jury's finding of bad faith where it is supported by competent, substantial evidence, as "it is not the function of [the appellate court] to substitute its judgment for the trier of fact." Berges , 896 So.2d at 680.
In a case "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." Powell v. Prudential Prop. & Cas. Ins. Co. , 584 So.2d 12, 14 (Fla. 3d DCA 1991). In such a case, where "[t]he financial exposure to [the insured] [i]s a ticking financial time bomb" and "[s]uit c[an] be filed at any time," any "delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith." Goheagan v. Am. Vehicle Ins. Co. , 107 So.3d 433, 439 (Fla. 4th DCA 2012) (citing Boston Old Colony , 386 So.2d at 785 ).
The damages claimed by an insured in a bad faith case "must be caused by the insurer's bad faith." Perera v. U.S. Fidelity & Guar. Co. , 35 So.3d 893, 902 (Fla. 2010). However, "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." Berges , 896 So.2d at 677.
Federal case law interpreting our bad faith precedent does not always hit the mark. For example, in this case, the Fourth District relied in part on Novoa v. GEICO Indemnity Co. , 542 F. App'x 794 (11th Cir. 2013), which was not selected for publication in the Federal Reporter. In that case, the Eleventh Circuit Court of Appeals stated that "[t]o fulfill the duty of good faith, an insurer does not have to act perfectly, prudently, or even reasonably. Rather, insurers must 'refrain from acting solely on the basis of their own interests in settlement.' " Id. at 796 (quoting State Farm Mut. Auto. Ins. Co. v. Laforet , 658 So.2d 55, 58 (Fla. 1995) ). Though the Eleventh Circuit cherry-picked a single clause *8 from this Court's opinion Laforet in which we addressed the narrow issue of the validity "of retroactively applying a penalty to insurance companies for bad faith conduct in failing to settle uninsured motorist claims," 658 So.2d at 56, it failed to consider our opinion in Boston Old Colony , where we made clear that there is far more to the bad faith inquiry than whether the insurer acted in its own interest.
Indeed, in Boston Old Colony , we stated in no uncertain terms that an insurer "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." 386 So.2d at 785. We explained that this duty obligated an insurer "to exercise such control" over the handling of the claim "and make such decisions in good faith and with due regard for the interests of the insured." Id. Additionally, not only is an insurer required to refrain from acting in its own interests in handling the claim, but it must also act with "care and diligence." Id. Thus, the Eleventh Circuit's contention that an insurer need not act prudently or even reasonably also misconstrues our well-established bad faith precedent.
As we discuss below, the Fourth District went astray, in part, by relying on this federal case, in lieu of this Court's precedent, to reverse the judgment entered in favor of Harvey. We now turn to this case.
II. This Case
Under the totality of the circumstances, we conclude that there was competent, substantial evidence to support the jury's finding that GEICO acted in bad faith in failing to settle the estate's claim against Harvey. In concluding otherwise, the Fourth District (1) failed to properly apply the directed verdict standard; and (2) misapplied this Court's precedent in Boston Old Colony and Berges . We also conclude that the Fourth District misstated the law when it stated that an insurer cannot be liable for bad faith "where the insured's own actions or inactions result, at least in part, in an excess judgment." Harvey , 208 So.3d at 816. Nothing in our precedent can be read to suggest that an insurer cannot be found liable for bad faith merely because the insured could have attempted on his own to avoid the excess judgment. In fact, our precedent states just the opposite, as it is the insurer who owes a fiduciary obligation to the insured "to exercise such control and make such decisions in good faith and with due regard for the interests of the insured." Boston Old Colony , 386 So.2d at 785.
We first address the sufficiency of the evidence supporting the jury's finding of bad faith.
A. Sufficiency of the Evidence
In a bad faith case, the evidence must be viewed in the context of the circumstances of each particular case. See Berges , 896 So.2d at 680 (stating that each bad faith case "is determined on its own facts"). In this case, viewing the evidence in the light most favorable to Harvey, GEICO's independent investigation of the facts revealed, within days after the accident, that this was a case of clear liability and substantial damages, and a jury verdict could exceed the insured's $100,000 policy limit. Not only did GEICO know that Harvey was at fault for the accident, but it knew that John Potts, a husband and father of three children, died as a result. In other words, this was a case of catastrophic damages.
As the evidence reveals, however, GEICO failed to act as if the financial exposure to Harvey was a "ticking financial time bomb." Goheagan , 107 So.3d at 439. The evidence shows that GEICO completely dropped the ball and failed to fulfill its obligation to Harvey to "use the same *9 degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." Boston Old Colony , 386 So.2d at 785. Instead of doing everything possible to facilitate settlement negotiations, GEICO'S claims adjuster, Korkus, was a considerable impediment to both Harvey and the estate. When Domnick, the estate's attorney, requested a statement from Harvey, Korkus refused the request, despite acknowledging that such statements were standard practice. Additionally, not only did Korkus refuse the request, but she did not inform Harvey of the request until two weeks later, when Korkus received a letter from Domnick stating that the request had been denied. Even when Harvey informed Korkus that he intended to meet with his attorney to compile the information necessary for the statement, Korkus did not relay this information to Domnick. In fact, Korkus wholly failed to communicate with Domnick at all after receiving his letter.
The significance of Korkus's failure to inform the estate that Harvey intended to provide a statement cannot be overstated, as Domnick testified that had he known that Harvey planned to give a statement, "he would have recommended delaying the filing of the wrongful death suit." Harvey , 208 So.3d at 813. Further, the estate's personal representative testified that "she would have followed her attorney's advice and would have declined to file the lawsuit." Id. at 813-14. Thus, had GEICO acted "with due regard" for Harvey's interests, the excess judgment could have been prevented. Boston Old Colony , 386 So.2d at 785. There can be no doubt that had GEICO been faced with paying the entire multimillion-dollar judgment returned by the jury in this case, an amount that was completely foreseeable given the clear liability and catastrophic damages, it would have done everything possible to comply with the estate's reasonable demands.
Accordingly, we conclude that there was competent, substantial evidence to support the jury's finding that GEICO acted in bad faith in failing to settle the estate's claim against Harvey. In concluding otherwise, the Fourth District failed to properly apply the directed verdict standard that all evidence be viewed in the light most favorable to Harvey, as the nonmoving party.
In addition to the Fourth District's failure to properly apply the directed verdict standard, it relied on a nonbinding decision of the Eleventh Circuit Court of Appeals, which cannot be reconciled with this Court's bad faith jurisprudence. See Novoa , 542 F. App'x 794. As a result, the Fourth District misapplied this Court's precedent in Boston Old Colony and Berges .
Relying on the Eleventh Circuit's opinion in Novoa , the Fourth District acknowledged that "GEICO could have acted more efficiently in handling the insured's claim." Harvey , 208 So.3d at 816. The Fourth District concluded, however, that the evidence "merely show[ed] that GEICO could have perhaps 'improved its claims process,' not that it acted in bad faith." Id. (quoting Novoa , 542 F. App'x at 796 ). The Fourth District stated further that, "even if GEICO's actions were negligent, negligence alone is insufficient to prove bad faith." Id. While it is true that negligence is not the standard, we made clear in Boston Old Colony that "[b]ecause the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith." 386 So.2d at 785 (emphasis added). By relying on this opinion from the Eleventh Circuit in lieu of this Court's binding precedent in Boston Old Colony , the Fourth District minimized the seriousness of the insurer's duty to act *10 in good faith with due regard for the interests of its insured.[2]
Instead of taking seriously what the duty of good faith requires of insurers as set forth in Boston Old Colony , the Fourth District appeared to treat the obligations an insurer owes to its insured as a checklist; so long as a checkmark appeared next to each item, bad faith may not be found. Indeed, the Fourth District noted that GEICO notified Harvey of settlement opportunities, advised him of the possibility of an excess judgment, and recommended that he retain his own attorney. Harvey , 208 So.3d at 815. Thus, the Fourth District concluded that GEICO "fulfilled every obligation" it owed Harvey. Id.
Significantly absent from the Fourth District's analysis, however, is whether GEICO "use[d] the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." Boston Old Colony , 386 So.2d at 785. Indeed, had the Fourth District conducted a careful analysis of this question, it would not have concluded as a matter of law that GEICO acted "in good faith with due regard for the interests" of Harvey when Korkus failed to inform the estate's attorney that Harvey was working on a financial statement even after both Harvey and Korkus's supervisor specifically asked Korkus to do so. Id.
In addition to concluding that GEICO fulfilled its obligations to Harvey, the Fourth District also found significant that GEICO "tendered the policy limits, unconditionally, nine days after the accident." Harvey , 208 So.3d at 816. Indeed, when considering the circumstances in this case, offering the $100,000 policy limits when GEICO knew that the estate demanded a statement from Harvey as to any additional assets that he might own was not only perfectly reasonable but critical to a prompt resolution. However, nothing in either Boston Old Colony or Berges can be read to suggest that an insurer's obligations end by tendering the policy limits. To the contrary, the insurer's duty to act in good faith "in handling the defense of claims against its insured" continues through the duration of the claims process. Boston Old Colony , 386 So.2d at 785.
The Fourth District further misapplied our precedent when it blamed Harvey for the estate's decision to return GEICO's check and file suit, reasoning that Harvey "never provided a statement to the estate despite having the assistance of legal counsel for several days before suit was eventually filed." Harvey , 208 So.3d at 816. As we stated in Berges , "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." 896 So.2d at 677. This is because, as the insured, Harvey "surrendered to the insurer all control over the handling of the claim." Boston Old Colony , 386 So.2d at 785. Indeed, as Harvey's bad faith expert testified, because GEICO was handling the claim, Harvey could not contact the estate's attorney directly, but had to use Korkus as "a go-between." The Fourth District, thus, misapplied our precedent when it blamed Harvey for failing to do more to avoid the excess judgment.
In concluding the evidence was insufficient to show that GEICO acted in bad faith in failing to settle the estate's claim *11 against Harvey, the Fourth District did not properly apply the directed verdict standard and misapplied this Court's well-established bad faith precedent by relying on erroneous federal precedent. Had the Fourth District properly applied the directed verdict standard and faithfully adhered to this Court's precedent, the only result would have been to uphold the jury's verdict for Harvey, because the totality of the circumstances support the jury's finding that GEICO acted in bad faith in handling the defense of claims against Harvey.
We now turn to the Fourth District's statement that an insurer cannot be found liable for bad faith where the excess judgment was caused in part by the insured.
B. Causation
In the decision below, the Fourth District stated that "where the insured's own actions or inactions result, at least in part, in an excess judgment, the insurer cannot be liable for bad faith." Harvey , 208 So.3d at 816. We conclude that this statement misapplies our precedent in Berges , where we stated that "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." Berges , 896 So.2d at 677.
After holding that the evidence was insufficient to show that GEICO acted in bad faith, the Fourth District went on to conclude the that "[e]ven assuming that GEICO handled [Harvey's] claim improperly, [Harvey] failed to establish that GEICO's conduct caused the excess judgment." Harvey , 208 So.3d at 816. In reaching this conclusion, the Fourth District, again relying on federal cases, stated that "where the insured's own actions or inactions result, at least in part, in an excess judgment, the insurer cannot be liable for bad faith." Id. (citing Barnard v. Geico Gen. Ins. Co. , 448 F. App'x 940, 944 (11th Cir. 2011) ; Novoa , 542 F. App'x at 796-97 ). This statement is fundamentally inconsistent with this Court's precedent, which could not be clearer in stating that "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." Berges , 896 So.2d at 677.
While this Court has stated that "there must be a causal connection between the damages claimed and the insurer's bad faith," Perera , 35 So.3d at 902, this Court has never held or even suggested that an insured's actions can let the insurer off the hook when the evidence clearly establishes that the insurer acted in bad faith in handling the insured's claim. In fact, the standard jury instructions on legal cause in a bad faith case belies the Fourth District's conclusion that where the insured's own actions, even "in part" cause the judgment, the insurer cannot be found liable for bad faith. Indeed, the standard legal cause instruction states:
Bad faith conduct is a legal cause of [loss] [damage] [or] [harm] if it directly and in natural and continuous sequence produces or contributes substantially to producing such [loss] [damage] [or] [harm], so that it can reasonably be said that, but for the bad faith conduct, the [loss] [damage] [or] [harm]would not have occurred.
Fla. Std. Jury Instr. (Civ.) 404.6(a). Nowhere in this instruction does it state that an insurer can escape liability merely because the insured's actions could have contributed to the excess judgment.[3]
*12 To take the Fourth District's reasoning to its logical conclusion, an insurer could argue that regardless of what evidence may be presented in support of the insured's bad faith claim against the insurer, so long as the insurer can put forth any evidence that the insured acted imperfectly during the claims process, the insurer could be absolved of bad faith. As Harvey argues, this would essentially create a contributory negligence defense for insurers in bad faith cases where concurring and intervening causes are not at issue. We decline to create such a defense that is so inconsistent with our well-established bad faith jurisprudence which places the focus on the actions on the insurer-not the insured. Berges , 896 So.2d at 677.
CONCLUSION
An insured pays its insurance premiums with the expectation that the insurer will "act in good faith in the investigation, handling, and settling of claims brought against the insured." Berges , 896 So.2d at 683. In this case, a jury found that GEICO acted in bad faith by failing to settle the estate's claim against Harvey. Substituting its own judgment for that of the jury, the Fourth District erroneously concluded that the evidence was insufficient to show that GEICO acted in bad faith and that, even if it did, GEICO's actions did not cause the excess judgment against Harvey.
In reaching these erroneous conclusions, the Fourth District failed to properly apply the directed verdict standard and misapplied this Court's well-established bad faith precedent. For all the reasons stated, we quash the Fourth District's decision, and direct that on remand, the jury verdict and final judgment be reinstated.
It is so ordered.
PARIENTE, LEWIS, and LABARGA, JJ., concur.
CANADY, C.J., dissents with an opinion, in which POLSTON and LAWSON, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY, C.J., and LAWSON, J., concur.

We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.; see also Cortez v. Palace Resorts, Inc. , 123 So.3d 1085, 1087 (Fla. 2013) (stating that this Court's conflict jurisdiction was properly invoked by the district court's misapplication of a decision of this Court).

Regarding the Fourth District's reliance on federal case law, it has been observed that the "[t]o the extent that the federal cases permit summary judgment based on Federal Rule of Civil Procedure 56... they are of limited precedential value in Florida summary judgment cases" because Florida places a higher burden on a party moving for summary judgment in state court. Byrd v. BT Foods, Inc. , 948 So.2d 921, 923-24 (Fla. 4th DCA 2007).

In this case, Harvey argued in favor of including the standard legal cause instruction in the jury's instructions. However, GEICO argued against its inclusion, explaining that it was simply arguing that "it did not act in bad faith because the case could not have been settled. Acting fairly and honestly, we did everything we could and we acted in good faith." Accordingly, the only substantive instruction on bad faith law given to the jury was:
Bad faith on the part of an insurance company is failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests.
The Legal Cause Standard Jury Instruction includes additional optional instructions on concurring cause and intervening cause. Fla. Std. Jury Instr. (Civ.) 404.6(b)-(c). However, GEICO specifically requested that those instructions, also, not be given to the jury in this case.