DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JANE HANCOCK, as personal representative of the Estate of
Joseph N. Hancock,

Appellant,

v.

FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY,

Appellee.

No. 2D2024-1484

_____

September 19, 2025

Appeal from the Circuit Court for Pasco County; Kimberly Byrd, Judge.

Tracy Raffles Gunn of Gunn Appellate Practice P.A., Tampa, for
Appellant.

David C. Borucke of Cole, Scott & Kissane, Tampa, for Appellee.


LABRIT, Judge.

In this bad faith case, the parties dispute the propriety of the jury
instructions and the verdict form. The trial court instructed the jury that
the insurer's bad faith had to be the cause of the underlying excess
judgment, and the verdict form required the jury to decide whether such
a causal connection existed. The jury found causation lacking, so the
trial court entered final judgment for the insurer. On this record, and
based on the current state of bad faith law, we see no error in the trial
court's rulings and affirm.

## I.

On May 28, 2016, a vehicle driven by Desiree Nathe struck and killed a bicyclist named Joseph Hancock. Ms. Nathe was insured under a policy issued by Florida Farm Bureau General Insurance Company (FFB) that provided $50,000 in bodily injury liability coverage. On May 31, 2016, FFB contacted Jane Hancock (Mr. Hancock's widow and later the personal representative of his estate) to discuss available insurance proceeds. An adjuster from FFB continued to contact her in the days and weeks that followed, and on two occasions during that timeframe the adjuster went to the Hancock home and taped an envelope containing a $50,000 check to the front door. But the adjuster was not invited or welcome, the checks were returned, and contact between Mrs. Hancock and FFB eventually ceased.

Ms. Nathe petitioned for bankruptcy in December 2017, and in January 2018, Mr. Hancock's estate filed a wrongful death lawsuit against her. The bankruptcy court allowed the wrongful death suit to proceed to liquidate the estate's claim against Ms. Nathe, and FFB provided a defense to Ms. Nathe in the lawsuit. Following a trial in July 2019, the jury found Ms. Nathe completely at fault for the accident and awarded the estate $13,550,592 in damages. A final judgment in that amount was entered in favor of the estate and against Ms. Nathe in October 2019.[1] And shortly thereafter, the estate paid for and received an assignment of Ms. Nathe's rights, title, and interest in any bad faith claim she might have against FFB related to the handling of the estate's wrongful death claim.

---

[1] It appears from the record that prior to entry of the final judgment, the bankruptcy court discharged Ms. Nathe of all debts in bankruptcy, which reportedly extinguished Ms. Nathe's obligation to pay the wrongful death judgment.

After receiving the assignment, and approximately a month and a half after the wrongful death judgment, the estate filed a bad faith action against FFB both individually and as Ms. Nathe's assignee. The estate alleged generally that FFB breached its duty to act in good faith in the handling of the estate's wrongful death claim and that FFB's breach resulted in a $13,550,592 excess judgment against its insured, Ms. Nathe. The estate's complaint, filed in November 2019, did not contain any specific details regarding FFB's alleged bad faith actions. In August 2021, however, and after some discovery had occurred in the case, the estate served supplemental answers to FFB's interrogatories specifying the facts upon which it relied to support its allegations of bad faith. The estate then filed an amended complaint in December 2021 that included specific and detailed allegations of bad faith.

The amended complaint alleged that when FFB contacted Mrs. Hancock on May 31, 2016—three days after the accident—she told FFB that she was represented by counsel, that she was not in a position or the correct mindset to deal with insurance, and that she was soon attending her deceased husband's viewing and funeral. But according to the estate, FFB's adjuster continued to contact her directly and told her multiple times that she needed to accept FFB's check and sign settlement documents. The estate alleged that this adjuster's "aggressive, intimidating, frustrating, and otherwise very upsetting" conduct impeded a settlement. As the estate put it, "Mrs. Hancock was too frustrated and upset with [FFB's conduct] to settle the wrongful death claim . . . for an amount within the liability policy limits."

The case went to trial in February 2024. The estate's theory was that FFB used improper and harassing tactics to attempt to obtain a settlement and pressured Mrs. Hancock to sign a release without counsel

present, so much so that it dissuaded her from settling. The estate's evidence showed that FFB contacted Mrs. Hancock multiple times despite knowledge that she was (or may have been) represented by counsel,[2] insisted that she didn't have a lawyer if she didn't have a signed agreement with one, and told her that she "needed to accept the checks . . . and sign the release." Mrs. Hancock also testified that she told FFB's adjuster not to come to her home but he came anyway and taped checks and settlement paperwork to her door multiple times. The estate posited that these actions violated the Adjusters' Code of Ethics, and it introduced evidence showing that Mrs. Hancock was willing and wanted to settle but lost her appetite to do so as a result of FFB's conduct.

FFB's theory of defense was that it acted quickly after the accident and tendered its policy limits multiple times. FFB also maintained that nothing it did resulted in the excess judgment, and it demonstrated that Mrs. Hancock did not report or complain about FFB's adjuster's conduct

---

[2] The parties disputed whether FFB knew that Mrs. Hancock was represented by counsel with respect to the wrongful death claim. The estate maintained that attorney Nancy Alfonso and her firm represented Mrs. Hancock from the outset, and that Mrs. Hancock informed FFB of this representation as early as May 31, 2016. According to FFB, Mrs. Hancock said attorney Alfonso was a family attorney but not necessarily representing her as to the wrongful death claim; FFB maintained that it repeatedly sought clarity from attorney Alfonso and her firm but never received a direct response as to the scope of their representation. FFB characterized the responses it did receive as "the lawyer version of Whack-A-Mole," such as attorney Alfonso reportedly stating on one occasion that she wasn't "sure they were going to represent the Hancocks," and attorney Carl DiCampli (another attorney from the same firm) declining FFB's offer to deposit the insurance proceeds in his firm's trust account and telling FFB on a separate occasion that he "anticipate[d] providing [FFB] a letter of representation" in the future, after a personal representative for the estate was appointed.

until 2021—five years after the accident, and two years after entry of the excess judgment and the original filing of the bad faith action. FFB took the position that the case never would have settled because Mrs. Hancock wanted to punish Ms. Nathe for Mr. Hancock's death. FFB showed that Mrs. Hancock pressed for criminal charges against Ms. Nathe, that the estate sought punitive damages against her, and that the estate settled with another insured under the FFB policy (the vehicle owner, Ms. Nathe's grandmother) despite and without mention of FFB's alleged unethical actions.

After both sides rested, the trial court held a charge conference. The parties agreed to use Florida Standard Jury Instruction (Civil) 404.4, which defines bad faith in the failure to settle context. Consistent with this standard instruction, the trial court instructed the jury that "[b]ad faith on the part of an insurance company is failing to settle a claim when under all the circumstances it could and should have done so had it acted fairly and honestly towards its insured and with due regard for her interests."

But the parties diverged when it came to the issue of causation. The estate initially argued that "[t]here's a standard instruction on causation that should be given," and it directed the trial court to Florida Standard Jury Instruction (Civil) 404.6(b) on concurring cause. FFB objected to this instruction and proposed using Florida Standard Jury Instruction (Civil) 404.6(a) instead, which defines legal cause generally. The estate then opposed giving any causation instruction on grounds that standard instruction 404.4 on bad faith—which the parties had agreed on—already encompasses causation by requiring a finding that the insurer "could and should have" settled. The estate also argued that if the court was going to instruct the jury on causation, the focus should

5

be on the cause of the failure to settle, not on the cause of the excess judgment. The trial court disagreed and adopted FFB's proposed causation instruction. It then instructed the jury as follows:

> In order for the actions of [FFB] to be considered bad faith, they must be the cause of the excess judgment against Desir[e]e Nathe.
>
> Bad faith conduct is a legal cause of loss, damage, or harm if it directly in a natural and continuous sequence produces or contributes substantially to producing such loss, damage, or harm so that it can reasonably be said that but for bad faith conduct, the loss, damage, or harm would not have occurred.

The second sentence tracks standard instruction 404.6(a) on legal cause, but the first sentence is not from any standard instruction.

The verdict form followed the trial court's ruling on the causation instruction, and it presented two questions for the jury. First, "[d]id [FFB] act in bad faith as to its insured Desiree Nathe in handling the claim of the Estate of Joseph Hancock?" And second, "[w]as the bad faith of [FFB] the legal cause of the excess judgment entered against Desiree Nathe in the underlying wrongful death action brought against her by the Estate of Joseph Hancock?" The jury answered "Yes" to the first question, finding that FFB acted in bad faith; but it answered "No" to the second question, finding that FFB's bad faith did not cause the excess judgment. Based on the jury's answers, the trial court entered final judgment for FFB on the estate's bad faith claim.

This is the estate's appeal.[3] It raises several challenges to the trial court's causation instruction and the causation question on the verdict form. We generally review a trial court's decision to give a jury instruction for abuse of discretion, *see ITD Indus., Inc. v. Bus. Res. Grp.,*

---

[3] FFB did not appeal the jury's finding of bad faith.

6

*Inc.*, 779 So. 2d 532, 534 (Fla. 2d DCA 2000), and we apply the same standard of review to a special verdict form, *see Vasta v. Universal Prop. & Cas. Ins.*, 407 So. 3d 1256, 1259 (Fla. 2d DCA 2025). However, the accuracy of a jury instruction and its conformity with the law is a legal question we review de novo. *See Tower Hill Prime Ins. v. Bermudez*, 388 So. 3d 165, 170 n.3 (Fla. 3d DCA 2023); *see also Jones v. Federated Nat'l Ins.*, 235 So. 3d 936, 939 (Fla. 4th DCA 2018) (reviewing de novo whether trial court applied the correct coverage doctrine in its jury instructions); *cf. Samiian v. Johnson*, 302 So. 3d 966, 980 (Fla. 1st DCA 2020) (reviewing de novo whether trial court erred in allowing jury to determine causation and damages in a bad faith case).

## II.

"[B]ad faith law was designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims." *Harvey v. GEICO Gen. Ins.*, 259 So. 3d 1, 6 (Fla. 2018) (quoting *Berges v. Infinity Ins.*, 896 So. 2d 665, 682 (Fla. 2004)). Consistent with this design, "an insured or a third-party claimant may bring a third-party bad-faith cause of action when an insurer has breached its duty of good faith and that breach results in an excess judgment being entered against its insured." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 899 (Fla. 2010) (citing *Berges*, 896 So. 2d at 668). However, "[t]he damages claimed by an insured [or its assignee] in a bad faith case 'must be caused by the insurer's bad faith.' " *Harvey*, 259 So. 3d at 7 (quoting *Perera*, 35 So. 3d at 902). Put differently, "the existence of a causal connection is a prerequisite" in a third-party bad faith case, and "there must be a causal connection between the damages claimed and the insurer's bad faith." *Perera*, 35 So. 3d at 901, 902.

7

Given this precedent, the estate acknowledges that causation is an element of a bad faith claim. But it contends that the trial court's causation instruction and verdict form went too far. The trial court added a sentence to standard instruction 404.6(a), and it instructed the jury that FFB's actions "must be the cause of the excess judgment." The verdict form followed suit, asking the jury to decide whether FFB's bad faith was "the legal cause of the excess judgment." The estate argues that it was erroneous and confusing to focus the jury's attention on the cause of the excess judgment in the wrongful death suit, and that the focus should have been on the cause of the failure to settle the wrongful death claim. We recognize that in some cases there may be a distinction between the two,[4] and that causation of an excess judgment conceptually could be more difficult to prove than causation of a failure to settle. But our supreme court instructs that bad faith requires a breach which "results in an excess judgment," and that the damages claimed—which in this case were the excess judgment—"must be caused by the bad faith." *Perera*, 35 So. 3d at 899, 901. In light of this binding precedent, the trial court's causation instruction and verdict question were not legally inaccurate.

We also cannot say that the trial court abused its discretion by instructing the jury as it did or by including a causation question on the verdict form. "A trial court is afforded broad discretion in formulating appropriate jury instructions and its decision should not be reversed unless the error resulted in a miscarriage of justice or the instruction

---

[4] In our view, neither the evidence nor the parties' legal arguments drew a meaningful distinction between the failure to settle and the excess judgment. Reduced to its essence, the estate's theory of liability was that both were inevitable due to FFB's conduct in the first few months after the accident.

was reasonably calculated to confuse or mislead the jury." *ITD Indus., Inc.*, 779 So. 2d at 534; *see also CDS Holdings I, Inc. v. Corp. Co. of Miami*, 944 So. 2d 440, 442 (Fla. 3d DCA 2006) (applying the same standard to a special verdict form). The estate argues that there was a reasonable possibility of confusion because the jury could have found that Ms. Nathe's negligence—and not FFB's bad faith—"caused" the excess judgment. While we don't disagree that this was a possible discussion in the jury room, Ms. Nathe's negligence was never a focus of the parties' evidence or arguments at trial.[5]

Even more, the subject instruction was not confusing. It told the jury that FFB's actions had to be the cause of the excess judgment. This is both consistent with applicable law and pertinent to the issues the parties raised through their evidence at trial. *See Butler v. State*, 493 So. 2d 451, 452 (Fla. 1986) ("Jury instructions must relate to issues concerning evidence received at trial." (citing *Buford v. Wainwright*, 428 So. 2d 1389, 1390–91 (Fla. 1983))). It is also consistent with testimony of the estate's bad faith expert, who told the jury on cross-examination, without objection:

> Q: You understand in a bad-faith case and what you've pled you have got to prove actually caused the excess judgment?
> A: I do, sir.
> Q: So what has caused the excess judgment [in your opinion] is that FFB made [Mrs. Hancock] so mad that she wouldn't settle; correct?
> A: Correct.

Furthermore, beginning with opening statements and continuing through the presentation of the evidence, the parties offered competing

---

[5] In fact, the record indicates that the trial court granted a motion in limine to limit discussion of the accident and that there was no evidence on the details of the accident or what Ms. Nathe did to cause it.

theories as to why the estate's underlying wrongful death claim led to an excess judgment against FFB's insured.[6] The estate maintained that it was because FFB's aggressive and unethical conduct extinguished the estate's desire to settle, while FFB argued that nothing it did caused the excess judgment because the estate never would have settled the claim. There was evidence supporting both theories, and while the language added to standard instruction 404.6(a) may have been gratuitous, we cannot say that no reasonable trial judge would have provided it in this situation. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980); *see also Nichols v. State*, 312 So. 3d 530, 534 (Fla. 2d DCA 2021) ("[T]he entire purpose of jury instructions 'is to enlighten the jury upon questions of law pertinent to the issues of fact submitted to them in the trial of the case . . . .' " (quoting *Holman Live Stock Co. v. Louisville & Nashville R.R. Co.*, 87 So. 750, 751 (Fla. 1921))); *McCaw v. State*, 395 So. 3d 1065, 1069 (Fla. 4th DCA 2024) ("[A] trial court can modify a

---

[6] For example, the estate's counsel told the jury during opening statements:

> In this case the excess judgment was quite significant. You'll hear evidence that the excess judgment -- that the judgment in this case was $13.5 million. Eventually, you'll hear evidence that that could have been avoided had this insurance company acted ethically . . . .
>
> . . . .
>
> The evidence will show that Jane Hancock was more than willing to settle, but [FFB's] continued aggressive conduct, going behind her lawyer's back, violating ethical rules, and disregarding reasonable requests that she made, got her madder than a wet hen. Those are the exact words that she used. . . . She'll explain to you what that means, and it's something that she just couldn't get over. And at that point, the die is cast. The case was going to go to trial, and there was going to be a judgment.

10

standard instruction to fit the facts of a particular case if the modified instruction does not materially change the applicable law.").

We are mindful that "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." *Harvey*, 259 So. 3d at 7 (quoting *Berges*, 896 So. 2d at 677). The trial court's causation instruction and verdict question did not shift this focus, nor did it distract the jury from what the evidence proved to be an issue in the case: whether the excess judgment would not have occurred but for FFB's bad faith.

In resolving this issue, the jury was either going to believe the estate's theory—that there would be no excess judgment had FFB not deterred Mrs. Hancock from settling early on—or it wasn't. And the jury heard FFB's evidence showing that there were no complaints about FFB's conduct when it occurred, while the wrongful death suit was ongoing, when the estate settled with another insured under the same policy, or at any point before the excess judgment.[7] On these facts, it was not

---

[7] FFB also presented evidence suggesting that the estate had no desire to settle for reasons unrelated to FFB's conduct. While the focus in a bad faith case is on the insurer's conduct, we do not consider such evidence of a claimant's conduct or motivations to be "off limits" when causation is a disputed issue. After all, our supreme court acknowledged in *Harvey* that bad faith law is aimed at protecting insureds "who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims," and it reiterated that "the 'totality of the circumstances' standard" governs whether an insurer has acted in bad faith. 259 So. 3d at 6, 7 (quoting *Berges*, 896 So. 2d at 680, 682). Thus, there must be some instance where the actions of the claimant or the insured have some bearing on whether an insurer is held liable for bad faith. We recognize that an insurer cannot escape liability simply because an insured or a claimant may have contributed to an excess judgment. *See id.* at 11–12. But if something beyond an insurer's control precludes it from settling and avoiding an excess judgment, the

11

unreasonable for the trial court to instruct the jury on causation and focus its attention on whether FFB caused the excess judgment.

## III.

This leads us to the estate's alternative argument. The estate contends that the trial court erred altogether by giving any causation instruction because the bad faith instruction already encompassed the element of causation the estate had to prove. We disagree. The trial court's bad faith instruction told the jury, consistent with standard instruction 404.4, that bad faith is the failure to settle when an insurer "could and should have done so" had it acted fairly and honestly towards its insured. And the trial court's causation instruction, which was a modified version of standard instruction 404.6(a), explained the concept of legal cause such that harm "would not have occurred" but for the insurer's bad faith conduct. We do not view these instructions as overlapping or duplicative. Indeed, they align with our supreme court's pronouncement that a claimant may bring a bad faith action "when [1] an insurer has breached its duty of good faith and [2] that breach results in an excess judgment." *Perera*, 35 So. 3d at 899. Standard instruction 404.4 describes conduct akin to an insurer's breach of duty, while standard instruction 404.6(a) on legal cause is consistent with the causal connection that must exist in bad faith actions.

Moreover, causation was a key factual issue in dispute in this case based on the evidence the parties presented at trial. We do not deem it legal error to instruct the jury on the legal standard it must apply to resolve a factual dispute the parties put before it.

---

jury should be allowed to consider it in deciding whether the insurer's actions were a legal cause of the judgment.

12

The estate argues otherwise based in part on the Fourth District's decision in *Nationwide Property & Casualty Insurance Co. v. King*, 568 So. 2d 990 (Fla. 4th DCA 1990). There, the Fourth District found no error in the trial court's refusal to give a legal cause instruction, and it remarked that "[t]he Florida standard jury instruction on bad faith adequately covered the law." *Id.* at 990. It is unclear from the limited recitation of the facts in *King* whether causation was an issue in that case as it was here. And even if there is any similarity between *King* and this case, there have been developments in the law in the decades since *King*, most notably *Perera*, 35 So. 3d at 902, and *Harvey*, 259 So. 3d at 7, both of which confirmed that causation is an essential element of a bad faith case. We deem *King* inapplicable for these reasons.

The estate also points to the Notes on Use for standard instruction 404.6(a), which state without explanation or authority that "[n]o part of this instruction should be given if the court is going to determine damages." Here, the only damages sought were the excess judgment— the amount of which was not in dispute—so the trial court was going to determine damages if the jury found FFB liable. The estate maintains that per the Notes on Use, the trial court should not have instructed the jury on causation. As a threshold matter, however, the Notes on Use are not binding and a trial court may and should adapt the standard instructions to fit the facts of a particular case. *See In re Standard Jury Instructions in Civil Cases*, 260 So. 3d 965, 966 (Fla. 2018).

We also are unaware of any authority that holds or even suggests that it is per se error to instruct on causation in a bad faith case where the trial court will determine damages. Causation is traditionally a separate element, and instructing on causation was warranted here based on the law and the evidence the parties presented at trial.

13

**IV.**

The trial court gave a jury instruction that was legally accurate, and its instruction related to an element of the estate's claim that the parties intensely disputed at trial. Based on the evidence and issues presented, the trial court did not reversibly err in giving a causation instruction or by including a causation question on the verdict form. We therefore affirm the final judgment for FFB.

Affirmed.

LUCAS, C.J., and VILLANTI, J., Concur.

_____

Opinion subject to revision prior to official publication.